67 A.3d 1194

CITY OF PITTSBURGH and UPMC Benefit
Management Services, Inc., Appellants

v.

WORKERS' COMPENSATION APPEAL
BOARD (Robinson), Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 18, 2011.

Decided March 25, 2013.

346

Bradley R. Andreen, O'Brien, Rulis & Bochicchio, L.L.C., for Appellants.

Darryl R. Slimak, McQuaide Blasko Law Offices, State College, for Pennsylvania State University, Appellant Amicus Curiae.

Lawrence R. Chaban, Lawrence R. Chaban, Attorney At Law, for Dorothy Robinson, Appellee.

Amber Marie Kenger, Richard C. Lengler, Harrisburg, Workers Compensation Appeal Board, for Workers' Compensation Appeal Board, Appellee.

Daniel King Bricmont, Caroselli, Beachler, McTiernan & Conboy, L.L.C., Pittsburgh, for Pennsylvania Association for Justice, Appellee Amicus Curiae.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Chief Justice CASTILLE [1].

This appeal involves the assignment of the burden of proof in a workers' compensation case when the employer seeks to modify or suspend a claimant's benefits on the basis that the claimant has retired. The Commonwealth Court plurality devised a "totality of the circumstances" test and concluded that the employer in the case *sub judice* failed to show that

[1]. This matter was reassigned to this author.

the injured worker had voluntarily withdrawn from the workforce. For the reasons herein, we affirm the order of the Commonwealth Court.

Dorothy Robinson ("Claimant") began working as a police officer of the City of Pittsburgh ("Employer") on April 17, 1989. In 1997, she sustained a work-related injury and Employer placed her in a light-duty position performing office work in the identification section. On October 15, 2001, while Claimant was traveling to an appointment to obtain treatment for her work-related injury, she was involved in an automobile accident in which she sustained new injuries. Employer accepted the subsequent injuries through a Notice of Temporary Compensation Payable dated December 18, 2001. After the accident, Claimant did not return to her light-duty position, nor was she offered any other light-duty work.

In either November or December 2004, Claimant sought and received a disability pension, which is awarded to Pittsburgh police officers if a work-related injury "disable[s] him or her from performing the duties of his or her position or office." 53 P.S. § 23564(a). In connection with Claimant's claim of entitlement to a disability pension, she was examined by three physicians who certified that Claimant was unable to perform her pre-injury job as a police officer.

Nearly three years later, on October 30, 2007, Dr. Victor Thomas performed an independent medical examination of Claimant on behalf of Employer. Dr. Thomas concluded that although Claimant was not fit to perform her prior job as a police officer, she could perform modified-duty work; a form attached to the report specified her work restrictions (*e.g.*, the length of time she could stand during an 8–hour workday; her ability to lift items; physical limitations such as climbing stairs). Report of Dr. Thomas, 11/3/07 at 4 & "Functional Capacities Form."

On November 8, 2007, Employer sent Claimant a Notice of Ability to Return to Work, advising that she had "been released to return to work in a modified position" pursuant to

Dr. Thomas' examination.[2] On November 21, 2007, Employer filed a Petition to Suspend Compensation Benefits, asserting that Claimant was capable of working, "but has voluntarily removed herself from the work force as she has not looked for or sought employment in the general labor market." Claimant filed a response, denying the averments of the suspension petition and asserting that she remained attached to the workforce and had registered for work with the Pennsylvania Job Center. She further claimed that she was not presently working only because of the unavailability of work and because Employer had eliminated her light-duty position.

The WCJ conducted three hearings between January and October 2008. Claimant, who was fifty-two years old at the time of the January 2008 hearing, testified regarding her prior employment, her physical condition, her receipt of benefits, and her attempts to find work. Claimant also offered the deposition testimony of Deborah Curry, a Senior Claims Examiner for UPMC Work Partners, who testified regarding the termination of the light-duty work program previously offered by Employer. Employer submitted the deposition testimony of Dr. Thomas, as well as another doctor's report regarding Claimant's medical condition.

The Workers' Compensation Judge ("WCJ") denied the suspension petition, concluding that Claimant had not voluntarily removed herself from the workforce. The WCJ explained that when an employer terminates the position of a worker injured during the course of employment, the employer must provide the claimant with temporary total disability benefits. If the employer later seeks to modify or suspend the benefits, the employer must show the availability of suitable work. Yet here, the WCJ found, Employer never offered

2. Section 306(b)(3) of the Act provides that an employer that "receives medical evidence that the claimant is able to return to work in any capacity" must issue a written notice advising the claimant of, *inter alia*, "the nature of the employe's physical condition or change of condition" and the claimant's "obligation to look for available employment." 77 P.S. § 512(3). Parenthetically, the statute uses the apparently archaic term "employe" rather than "employee"; modern dictionaries accept both spellings.

Claimant any light-duty work and in fact in 2003 abolished the modified duty program in which she had been employed; nor did Employer produce any expert testimony, via an earning power assessment, showing that there were vacancies in the local job market that Claimant was qualified to perform.

The WCJ also found controlling this Court's decision in *Southeastern Pa. Transp. Authority ("SEPTA") v. WCAB (Henderson)*, 543 Pa. 74, 669 A.2d 911, 913 (1995), which held that for disability benefits to continue following retirement, a claimant must show that he or she is seeking employment after retirement or that he or she was forced into retirement due to the work injury. The WCJ concluded that Claimant was forced into disability retirement when Employer eliminated her light-duty position. Furthermore, even assuming that Claimant had the burden to show that she was seeking employment, the WCJ concluded that she had met that burden. The WCJ credited Claimant's testimony that as soon as she received the Notice of Ability to Return to Work, she reported to the Pennsylvania Job Center; that she had debilitating pain and did not know what level of work she could do; and that her condition had worsened since 2001, when she had last performed the light-duty work.

Employer appealed to the Workers' Compensation Appeal Board ("Board" or "WCAB"), which affirmed the WCJ's decision. Employer appealed to the Commonwealth Court, which affirmed in an *en banc*, plurality decision, with three judges joining the lead opinion authored by the Honorable Renée Cohn Jubelirer, one judge concurring in the result, and three judges dissenting. *City of Pittsburgh v. WCAB (Robinson)*, 4 A.3d 1130 (Pa.Cmwlth.Ct.2010).

Before the Commonwealth Court, Employer asserted that the Board erred in (1) upholding the WCJ's finding that Claimant remained attached to the workforce when this finding was not supported by substantial evidence; (2) affirming the WCJ's finding that Claimant was forced out of the entire workforce; and (3) determining that Employer was required to present evidence of the availability of suitable work within

Claimant's abilities in order to suspend benefits. 4 A.3d at 1133.

The plurality reviewed the pertinent law. Initially, the court explained, to secure a suspension of a claimant's benefits, an employer must meet the following requirements:

(1) The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

(2) The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

(3) The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

(4) If the referral fails to result in a job then [the] claimant's benefits should continue.

4 A.3d at 1134, quoting *Kachinski v. WCAB (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374, 380 (1987). The court indicated that pursuant to Section 306(b)(2) of the Act, 77 P.S. § 512(2),[3] an employer who seeks to modify or suspend a claimant's benefits generally must either: (1) show that it referred the claimant to a then-open job that fits within the occupational category for which the claimant has been given

3. Section 306(b)(2) states in pertinent part:
 (2) "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. If the employee does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply. If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe.
 77 P.S. § 512(2).

medical clearance, in accordance with *Kachinski;* or (2) establish a claimant's "earning power" through expert opinion evidence, such as job listings with employment agencies or advertisements in the claimant's usual area of employment. 4 A.3d at 1134 (citing *South Hills Health System v. WCAB (Kiefer)*, 806 A.2d 962, 966 (Pa.Cmwlth.Ct.2002)).[4]

The plurality also recognized that pursuant to *Henderson*, the employer need not prove the availability of suitable work in a circumstance where the claimant voluntarily removes herself from the labor market through retirement. To the contrary, when a claimant has retired, the claimant bears the burden of showing either that her work-related injury forced her out of the entire workforce, or that she is seeking employment after retirement. The court identified the relevant inquiry in this case as "when the burden should shift from an employer to show the availability of suitable work, under the *Kachinski* standard, to a claimant to show that she is still attached to the workforce or was forced out of the entire workforce by her work-related injury, under the *Henderson* standard. In other words, when is a claimant 'retired' such that *Henderson* and its progeny apply?" 4 A.3d at 1135.

---

4. We note that this Court has not yet definitively resolved the extent to which the Legislature's adoption of the 1996 amendments to the Act, in particular Section 306(b), supplanted the *Kachinski* standard.

Section 306(b)(2) provides that " 'earning power ... *shall* be based upon expert opinion evidence....' " 77 P.S. § 512(2) (emphasis added); *see supra* note 3. In *Riddle v. WCAB (Allegheny City Elec., Inc.)*, 603 Pa.74, 981 A.2d 1288 (2009), a majority of the Court indicated that Section 306(b)(2) "replaced" the common-law *Kachinski* approach and credited the Commonwealth Court's "holding that the 1996 amendment eliminated the *Kachinski* requirement[.]" *Id.* at 1292. The *Riddle* majority, however, also added a footnote suggesting that *Kachinski* may play a continuing role. In this regard, the majority concluded that, by adopting Section 306(b)(2), the Legislature "lowered" the *Kachinski* burden of proof by "allowing" an employer to obtain modification or suspension of benefits on evidence of earning power proved through expert testimony rather than by providing evidence that the claimant had obtained employment. *Id.* at 1292 n. 8. The footnote also relates that the *Kachinski* test continues to apply "exclusively only" in pre-amendment cases. *Id.*

The three-Justice concurrence in *Riddle* maintained that the question of whether Section 306(b)(2) replaced *Kachinski* was not squarely before the Court. For present decisional purposes, we need not resolve any issue respecting the continuing vitality or role of *Kachinski.*

In addressing this question, the plurality noted that Employer assumed that Claimant had retired merely because she had accepted a disability pension. The court further observed that disputes concerning whether a claimant has retired had not been frequently litigated. The court reviewed several of its own decisions, as well as this Court's decision in *Henderson*, and concluded that in each instance, "the claimant's retirement was undisputed or that the totality of the circumstances supported a holding that the claimant had made the decision to retire." *Id.*, citing *Henderson* (claimant was receiving Social Security retirement benefits, intended to apply for pension from his employer on his 65th birthday, and stated he was not looking for work); *Penn. State University v. WCAB (Hensal)*, 948 A.2d 907 (Pa.Cmwlth.Ct.2008) (employer showed work available within claimant's restrictions; claimant was still unemployed two years after reduction in wages); *Mason v. WCAB (Joy Mining Machinery & AIG Claim Services)*, 944 A.2d 827 (Pa.Cmwlth.Ct.2008) (circumstances showed claimant preferred to receive his disability pension rather than working, given his testimony that if he were to work elsewhere, he would lose his pension benefits); *Hepler v. WCAB (Penn Champ/Bissel, Inc.)*, 890 A.2d 1126 (Pa.Cmwlth. Ct.2006) (court did not review WCJ's finding that claimant had voluntarily retired); *County of Allegheny v. WCAB (Weis)*, 872 A.2d 263, 265 (Pa.Cmwlth.Ct.2005) (it was "undisputed Claimant retired and did not seek employment after retirement").

The plurality also examined the nature of retirement and whether the acceptance of a pension should create a presumption of retirement. The court noted that Black's Law Dictionary defined retirement as "[t]ermination of one's own employment or career, esp. upon reaching a certain age or for health reasons; retirement may be voluntary or involuntary." BLACK'S LAW DICTIONARY 1431 (9th ed.2009). The court observed that in cases involving pensions, it was important to analyze the facts involved and the type of pension at issue. The court explained that there are different types of pensions, including retirement and disability pensions. Disability pen-

sions, in turn, encompassed different types. For instance, the disability pension at issue in this case required only a showing that the recipient could not perform her time-of-injury job. The court reasoned that acceptance of this type of pension— by itself—would not indicate that the claimant had voluntarily left the entire workforce; instead, it was only an acknowledgement that the worker could not perform her time-of-injury position. 4 A.3d at 1137.

The plurality was also persuaded by the dual obligations of employers under the Act to pay benefits and to assist injured workers return to the workforce. *Id.* at 1137, citing *Landmark Constructors, Inc. v. WCAB (Costello)*, 560 Pa. 618, 747 A.2d 850, 854 (2000) ("[B]ecause of the Act's humanitarian objectives, an employer must do more than simply pay employees benefits for work-related injuries. In order to make the employee whole, the employer must try to reintroduce into the workforce those employees injured while pursuing the employer's interests."). The court also recognized that workers have a reciprocal obligation to cooperate with the employer's efforts to return them to the workforce. *Id.*

Distilling these considerations, the plurality ultimately would have adopted what it termed a "totality of the circumstances" standard:

> In order to show that efforts to return a claimant to the workforce would be unavailing because the claimant has retired, the employer must show, by the totality of the circumstances, that the claimant has chosen not to return to the workforce. Circumstances that could support a holding that a claimant has retired include: (1) where there is no dispute that the claimant retired; (2) the claimant's acceptance of a retirement pension; or (3) the claimant's acceptance of a pension and refusal of suitable employment within her restrictions.

*Id.* at 1138. Applying this standard, the court concluded that Employer did not provide sufficient evidence to show that Claimant intended to retire. For example, Claimant had accepted a disability pension conditioned upon her inability to perform her time-of-injury position, rather than a disability

pension that precluded her from working, or an "old-age" pension. Although Claimant failed to return to her light-duty position, she could not do so because Employer had eliminated the position; indeed, the WCJ found that Claimant would be working if Employer had not eliminated that job. Moreover, Claimant sought employment after receiving the Notice of Ability to Return to Work, even though she did not know her abilities or restrictions, and despite Employer's failure to offer her a position or to identify available positions within her capabilities.

Because Employer failed to show that Claimant had retired from the workforce, the plurality concluded that Employer was required to show the availability of suitable work within Claimant's restrictions to sustain its burden. And, because Employer failed to do so, the court did not reach Employer's remaining issues regarding Claimant's good faith search for employment or her forced removal from the workforce.

The Honorable Bernard J. McGinley provided the dispositive vote by concurring in the result, but did not file an opinion explaining his views.[5] Three Judges dissented. Then–Judge, now President Judge Dan Pellegrini opined that Claimant did not meet her burden of showing that she remained attached to the workforce once she had retired. He relied on the Commonwealth Court's decision in *Hensal*, which concluded that, "where, as here, a claimant accepts a pension, our Supreme Court, in [*Henderson*], held that the claimant is presumed to have left the workforce entitling an employer to a suspension of benefits unless he establishes that (1) he is seeking employment or (2) the work-related injury forced him to retire." 4 A.3d at 1140 (Pellegrini, J., dissenting) (citing *Hensal*, 948 A.2d at 910–11). Because of this presumption, and because he believed that Claimant did not show that one of the exceptions applied, Judge Pellegrini would have reversed the WCAB's decision. Judge Mary Hannah Leavitt reached the same

5. Obviously, when a vote is dispositive, the better course is for the concurring judge to explain the basis for his or her concurrence. *Cf.* Supreme Court IOPs § 4(B)(2) (as amended, effective February 8, 2013).

conclusion. In her view, a claimant's acceptance of any type of pension should be presumed to be a voluntary retirement, and she opined that it was not "onerous" for a claimant to rebut that presumption. *Id.* at 1142 (Leavitt, J., dissenting). Judge Leavitt reasoned that "the claimant who elects the pension separates from employment," and that Claimant had other available choices that would not have required her separation from employment when her light-duty job was terminated, including seeking Heart and Lung benefits or total worker's compensation disability benefits. *Id.* Both of the dissenting opinions were joined by then-President Judge Bonnie Brigance Leadbetter.

We granted allocatur, limited to the following issue which we rephrased solely for clarity:

Did the Commonwealth Court err by holding that, in a petition to suspend compensation benefits based upon an alleged voluntary withdrawal from the workforce, the employer bears the burden of showing by the totality of the circumstances that the claimant has chosen not to return to the workforce?

610 Pa. 1, 17 A.3d 917, 917–18 (2011). Our review in these sorts of appeals is to determine whether the adjudication at issue contains an error of law, a violation of constitutional rights, a failure to follow a practice or procedure of a Commonwealth agency, or findings of fact not supported by substantial evidence of record. 2 Pa.C.S. § 704; *Daniels v. WCAB (TriState Transp).*, 574 Pa. 61, 828 A.2d 1043, 1046–47 (2003). In this instance. the issue presents a question of law, and thus our review is plenary. *See id.*

In Employer's view, both *Henderson* and the seminal case of *Republic Steel Corp. v. WCAB (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994)[6] established a presumption that a claimant

6. In *Petrisek*, the Court concluded that a claimant who had voluntarily retired from the workplace was not entitled to receive occupational disease benefits. Based on the claimant's unequivocal testimony, the referee concluded that the claimant had retired in 1981. In 1988, when the worker was 68 years old, he sought benefits. In affirming the denial of benefits, the Court held that: "A disability which forces a claimant out of the workforce and into retirement is compensable

who separates from employment and receives a pension has voluntarily withdrawn from the workforce. Employer argues that a pension, by definition, is a benefit paid based upon retirement, citing BLACK'S LAW DICTIONARY 1134, 1135 (6th ed.) (defining "pension" as a "[r]etirement benefit paid regularly (normally, monthly), with the amount of such based generally on length of employment and amount of wages or salary of the pensioner"; and defining "pension plan" as, *inter alia,* "[a] plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to its employees, or their beneficiaries, over a period of years (usually for life) after retirement.").[7] Employer reasons that "receipt of a pension—any pension—is conditioned upon separation from employment, i.e. retirement." Employer's Br. at 19. Employer agrees with Judge Leavitt's dissent below that a disability pension should not be treated differently from any other pension, noting that the *Henderson* and *Hensal* courts did not draw such a distinction. Employer asserts that Claimant had other choices that would not have required her to separate from employment, such as seeking total disability benefits. Construing *Henderson, Hensal* and *Weis,* Employer concludes that the remedy of continuing workers' compensation benefits following retirement is appropriate only when a claimant was forced to retire from the entire workforce by the work injury (*Weis*), or when the claimant is seeking work in good faith (*Hensal*).

under the act. But, where the claimant suffers a disability which has no effect upon his earning power, no entitlement to benefits arises under the Act." 640 A.2d at 1269. Employer also relies on *Dugan v. WCAB (Fuller Co. of Catasauqua),* 131 Pa.Cmwlth. 218, 569 A.2d 1038, 1040 (1990) (where worker stated that he was retired, "[a]n employer need not prove the availability of employment, which a claimant has no intention of pursuing.").

7. The most recent edition of Black's Law Dictionary defines "pension" as "[a] fixed sum paid regularly to a person (or to the person's beneficiaries), esp. by an employer as a retirement benefit." BLACK'S LAW DICTIONARY 1248 (9th ed.2009). The Ninth Edition defines "pension plan," *inter alia,* as follows: "Under the Internal Revenue Code, an employer's plan established and maintained primarily to provide systematically for the payment of definitively determinable benefits to its employees, or their beneficiaries, over a period of years, usu. for life, after retirement." *Id.* at 1249.

358

Employer acknowledges that it should have to present some evidence to establish a *prima facie* case in the context of an alleged voluntary withdrawal from the workforce. To meet that burden, Employer submits that it should simply be required to show that the claimant accepted a disability pension (which equates to a "retirement pension"); at that point, retirement would be presumed, and the burden would then shift to the claimant. To rebut the presumption of retirement, Employer asserts, a claimant should have to present medical evidence of forced retirement from the entire labor market (and not just the pre-injury job) or indicia of a good faith job search. In Employer's view, such a requirement is not overly burdensome and Claimant failed to meet it here. Because Claimant presented no medical evidence that she was incapable of working in any capacity, Employer argues, she was not forced into retirement from the entire labor market. Moreover, Employer contends that Claimant failed to provide sufficient evidence of a good faith job search; instead, she testified that she neither worked nor sought any employment since 2001, except on one occasion, and only after Employer filed its suspension petition.

Employer maintains that the Commonwealth Court disregarded *Henderson* by imposing a new and prohibitive burden on an employer to prove the retired claimant's state of mind (*i.e.*, her intention to terminate her career or to not return to the workforce). According to Employer, the Commonwealth Court's decision requires an employer to prove a negative: because a claim would not be litigated unless a claimant disputed her retirement, an employer essentially must prove job availability for retired claimants receiving a disability pension.

Employer acknowledges the overall humanitarian purpose of the Act,[8] but focuses on the Act's corollary purpose: offering employers certainty in the form of limited exposure.

8. "The Pennsylvania Worker's Compensation Act is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Reifsnyder v. WCAB (Dana Corp.)*, 584 Pa. 341, 883 A.2d 537, 542–43 (2005).

*See Kramer v. WCAB (Rite Aid Corp.)*, 584 Pa. 309, 883 A.2d 518, 535 (2005). Employer also notes that cost containment is a legitimate concern. *Id.* Employer warns that the Commonwealth Court's decision undermines these goals since it may force an employer to continue to pay worker's compensation benefits to retired workers who no longer suffer a loss of earnings due to a work injury. Employer submits that these workers will receive a windfall, and will have little incentive to obtain employment.

Claimant counters that the burden-shifting presumption that Employer asks the Court to adopt (*i.e.*, presume voluntary withdrawal from the workforce upon acceptance of any form of pension) is "strange," and does not follow as a reasonable and natural deduction. Claimant notes that any worker who qualifies for and receives a pension always has the opportunity to remain attached to the labor market, including workers who accept Social Security "old-age" benefits. Claimant further argues that Employer relies upon another dubious presumption: a presumed general availability of employment for an injured worker with a residual ability to perform work. In Claimant's view, Employer would charge an unsophisticated claimant with knowledge of her work limitations based on her residual productive skill, education, age and work experience, whereas in other circumstances under the Act, an analysis of the injured worker's ability requires vocational expert testimony. Claimant asserts that this approach also contravenes long-standing precedent, culminating with *Kachinski.*

Claimant points out that the General Assembly no doubt was aware of existing precedent, including *Petrisek* and *Henderson*, when it enacted Section 306(b)(2), which requires an employer to show actual job availability, and an offer of employment to the injured worker. Claimant also notes that the General Assembly adopted Section 204(a) of the Act, 77 P.S. § 71(a),[9] which allows employers a workers' compensation

---

9. Section 204, entitled "Agreement, composition or release of damages as bar to claim for damages," states in pertinent part:

(a) No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages

offset for pensions to which the time-of-injury employer contributed. Claimant suggests that there would be no need for such a rule in cases in which the injured worker "retired" as all benefits would have stopped.[10]

Claimant does not endorse the Commonwealth Court plurality's totality of the circumstances test, suggesting that such a standard will cause extensive litigation about the injured worker's subjective intent, the type of pension, and the reasonableness of the worker's efforts to find employment. Rather, Claimant urges us to substantially limit when an employer can even argue that an injured worker has withdrawn from the workforce. Claimant requests that we take one of two approaches: either limit *Petrisek* and *Henderson* to situations in which the injured worker retired or left work for a pension first and then sought total disability benefits, or overrule those cases to the extent they create a presumption of removal from

> resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof; and any release executed in consideration of such benefits shall be void: Provided, however, That if the employe receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made under the provisions of sections 108 and 306, except for benefits payable under section 306(c) or 307. Fifty per centum of the benefits commonly characterized as "old age" benefits under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 et seq.) shall also be credited against the amount of the payments made under sections 108 and 306, except for benefits payable under section 306(c): Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury. **The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c).** The employe shall provide the insurer with proper authorization to secure the amount which the employe is receiving under the Social Security Act.
>
> 77 P.S. § 71 (footnotes omitted) (emphasis supplied).

10. In this case, Claimant testified that her worker's compensation benefits in fact were reduced because Employer was taking a pension credit. WCJ Op., 12/16/08 at 2.

the workforce based solely on the acceptance of a pension, and require employers to rely on the tools in the Act, namely, the offset for pension benefits and proof of earning power.[11]

To varying extents, both parties suggest that *Henderson* established a rebuttable presumption of retirement when a claimant has received a pension. In our view, *Henderson* does not fairly warrant that construction, given the nature of presumptions, as well as the facts therein, the actual issue forwarded and the analysis set forth in *Henderson*.

 Initially, presumptions are evidentiary tools used in our adversarial system of factfinding. *Commonwealth v. Hall*, 574 Pa. 233, 830 A.2d 537, 545 (2003). A mandatory presumption "tells the trier of fact that he must find the elemental fact upon proof of the basic fact." *Id.* There are two types of mandatory presumptions, rebuttable presumptions and conclusive presumptions. *Id.* n. 4. In the realm of the criminal law, a mandatory rebuttable presumption has been described as "requir[ing] the factfinder to find the presumed element if the basic fact is proven, unless the defendant comes forth with some evidence to rebut the presumed connection between the two facts.... Once the defendant satisfies this burden of production, the ultimate burden of persuasion returns to the prosecution." *Commonwealth v. MacPherson*, 561 Pa. 571, 752 A.2d 384, 390 (2000), citing *County Court of County of Ulster v. Allen*, 442 U.S. 140, 156, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). A mandatory conclusive presumption, which is not at issue here, is more momentous, as it "removes the presumed element from the case once the State has proved the predicate facts giving rise to the presumption." *Id.*, citing *Francis v. Franklin*, 471 U.S. 307, 314 n. 2, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

11. The Court has also considered the briefs of *amici curiae* filed on behalf of both parties. The Pennsylvania State University ("PSU") *amicus* brief largely follows the arguments of Employer. The Pennsylvania Association of Justice ("PAJ"), arguing in support of Claimant, asserts that it is the Legislature's province to determine whether a retired individual should have her workers' compensation benefits subject to forfeiture. PAJ adds that workers often apply for disability pensions or Social Security disability benefits in order to preserve other workforce benefits like group health plan coverage.

The General Assembly has prescribed mandatory rebuttable presumptions to govern certain issues in worker's compensation cases. For example, in the context of occupational diseases, a claimant initially must prove that he or she is afflicted by one of the enumerated illnesses in Section 108. 77 P.S. § 413. Once it is shown that the worker has contracted the occupational disease, a rebuttable presumption arises that the illness was contracted in the course of employment. *Id.; City of Phil. v. WCAB (Kriebel)*, 612 Pa. 6, 29 A.3d 762, 769 (2011). Thereafter, the evidentiary burden shifts to the employer to rebut the presumption with substantial, competent evidence. 29 A.3d at 769.

▆▆▆ A second evidentiary tool used by factfinders is a "permissive inference," which is "no more than a logical tool enabling the trier of fact to proceed from one fact to another, if the trier believes that the weight of the evidence and the experiential accuracy of the inference warrant so doing.... [T]he trier of fact can reject the inference in whole or in part." *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727, 735 (1972), citing 9 Wigmore, Evidence § 2491 (3d ed.1940). With a permissive inference, there is no burden shifting:

> A permissive inference allows, but does not require, the factfinder to infer the elemental fact from proof of the basic fact and places no burden of persuasion or production on the defendant.... In this situation, the basic fact may constitute *"prima facie"* evidence of the elemental fact.... "A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to persuade the [factfinder] that the suggested conclusion should be inferred based on the predicate facts proved."

*MacPherson*, 752 A.2d at 390, citing *Ulster County Court*, 442 U.S. at 157, 99 S.Ct. 2213; quoting *Francis v. Franklin*, 471 U.S at 314, 105 S.Ct. 1965. As with a rebuttable presumption, the party against whom a permissive inference operates may rebut the inferable conclusion with relevant evidence. *Id.*

The General Assembly has not adopted any sort of presumption, or permissive inference, governing the disability

pension situation presented here. Employer asks that this Court simply declare (or reaffirm what Employer believes we have already declared in *Henderson* ) that the acceptance of any type of pension establishes a rebuttable presumption that the injured worker has retired-essentially, that we judicially adopt a mandatory rebuttable presumption. It is no small matter to establish a mandatory presumption by decisional law. Leaving aside obvious questions of initial authority and retroactive application of such a device, constitutional considerations may arise. Thus, for example, in evaluating the constitutionality of a legislatively prescribed mandatory presumption, this Court has explained that the presumption must have "some rational connection between the fact proved and the ultimate fact presumed, and ... the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate." *Rich Hill Coal Co. v. Bashore,* 334 Pa. 449, 7 A.2d 302, 313–14 (1939). While this case does not involve a presumption established by the General Assembly, or a constitutional challenge, we do well to keep this guidance in mind. *See also Petrone v. Moffat Coal Co.,* 427 Pa. 5, 233 A.2d 891, 893 (1967) ("A presumption should always be based upon a fact, and should be a reasonable and natural deduction from that fact.").

We decline to adopt the extra-statutory presumption of retirement urged by Employer. Adoption of a presumption to govern this factual paradigm is largely a question of policy; and the policy, in this instance, seems to be one which would require empirical support. The judicial branch, faced with discrete factual patterns in individually-contested cases, is not particularly suited to make such empirical judgments to govern an entire set of cases.[12]

12. There are instances, including instances involving workers' compensation disputes, where there have been omissions in the legislative scheme, and this Court has acted to supplement the scheme by delineating standards and shifting burdens. *See, e.g., Riddle,* 981 A.2d at 1292 (*Kachinski* filled gap existing before 1996 Act amendments by delineating evidentiary standards for employers seeking modification or suspension of benefits). But, this has generally not involved the establishment of mandatory presumptions in the context of a statutory construct that did not so operate. It is one thing to identify respective burdens of

Furthermore, we do not believe it self-evident, or even logical to presume, from the simple fact that a claimant accepts a pension, a conclusion that the claimant has completely and voluntarily withdrawn from the workforce, or is prohibited from working in any capacity. This case, as is often the case, proves the point. Claimant did not simply retire to an able-bodied pension; she was entitled to a disability pension because of her prior service and a work-related condition which disabled her from her time-of-injury job. 53 P.S. § 23564(a). At most, Claimant's approved receipt of a **disability** pension necessarily shows that she could not perform her time-of-injury position; it does not necessarily follow that she, and all workers similarly situated to her, decided to forgo all employment. Any presumption of a total inability to work or intent not to work is conjectural. Mandatory presumptions are, essentially, time-saving evidentiary devices governing matters not subject to reasonable dispute (as a matter of logic or policy). The requisite rational connection between the fact proved (acceptance of any type of pension) and the ultimate fact that Employer would have presumed (voluntary retirement and removal from the workforce) is lacking here. Put another way, if the proffered presumption here was so obvious and legitimate, Employer should have little difficulty proving it by conventional evidentiary methods.

The fact that a claimant elects to receive a pension (of whatever kind) is not devoid of evidentiary weight; it may well be probative of a claimant's desire to leave the workforce. Thus, a claimant's receipt of a pension may give rise to a permissive inference that the claimant is retired. However, this is just one fact of many possible probative facts that must be considered in determining whether the claimant has voluntarily withdrawn from the workforce. Given that the inference to be drawn from a person's receipt of a pension, viewed alone, is equivocal and inconclusive, the receipt of a pension is not sufficient evidence, in and of itself, to discharge the employer's burden of proof.

proof and production, derived logically from a legislative scheme; it is a far different thing to establish a non-statutory presumption.

We also disagree with the notion that *Henderson* established a rebuttable presumption that a claimant has retired if the claimant accepts any type of pension. *Henderson* did not purport to lay down any such broad rule, and the holding in that case, like the holdings in all cases, must be read against its facts and the issues actually joined. *Cf. Commonwealth v. Marconi*, 2013 WL 309896 (Pa. January 22, 2013) (noting that seminal case never framed or addressed issue in terms presented by appellant). In *Henderson*, the claimant began receiving total disability payments after an injury in 1980. He returned to a light-duty position, and his compensation was reduced to partial disability status. In 1985, due to a recurrence of his work-related disability, he returned to total disability status. In subsequent litigation regarding the worker's status, a referee concluded that the claimant was entitled to receive total disability benefits, but only until July 1, 1989, the date upon which the referee determined that he had retired. The claimant's compensation was suspended based on his own testimony that he was receiving Social Security retirement benefits and that he was applying for a pension from SEPTA on his 65th birthday, June 18, 1989, together with evidence that he began receiving pension benefits on July 1, 1989. Notably, the claimant also testified and, when asked whether he was looking for work, answered, "No sir. Not now."

The Board reversed the referee based upon the Commonwealth Court's decision in *Dugan v. WCAB (Fuller Co. of Catasauqua)*, 131 Pa.Cmwlth. 218, 569 A.2d 1038 (1990), which the Board understood "to mean that disability benefits cannot not be suspended merely because a claimant receives pension benefits and Social Security retirement benefits; there must also be unequivocal evidence that the claimant has no intention of seeking employment after retirement." *Henderson*, 669 A.2d at 912 (characterizing basis of Board's decision). The Commonwealth Court affirmed the Board's decision, likewise invoking *Dugan* and its progeny, and emphasizing a statement from *Dugan* to the effect that "suspension of compensation benefits is appropriate upon retirement if 'a claimant states

unequivocally that he has no intention of seeking future employment.' " *Id.*, quoting *Dugan,* 569 A.2d at 1040. Summarizing the basis for the decisions below, the *Henderson* Court noted that neither the WCAB nor the Commonwealth Court in that case regarded the claimant's answer to the question of whether he was looking for work to be sufficiently unequivocal to justify a suspension of benefits.

The *Henderson* Court reversed, beginning its analysis by noting that the contested issue arose in the context of litigation over whether the claimant's total disability status should have been reduced to partial disability due to the availability of light-duty work within the claimant's physical limitations. The Court then adverted to the *Kachinski* case's teachings concerning the "process of revising disability status in this context," including the then-requirement that the employer prove a referral to an available job within the claimant's medical clearance. The Court noted that there was no issue in *Kachinski,* however, concerning the effect of retirement. *Id.*

Returning to the *Dugan* line of decisions in Commonwealth Court, the *Henderson* Court noted that *Dugan* itself had not required the employer to prove a referral to an available, medically satisfactory job, if the claimant "states unequivocally that he has no intention of seeking future employment." The *Henderson* Court noted that the rule so formulated in *Dugan* derived from the facts in that case, since the claimant there, when asked whether he was seeking employment, replied, "No, I am retired." In contrast, the *Henderson* Court noted, later Commonwealth Court opinions refused to suspend compensation benefits because there was proof that the claimants either: (1) intended to continue working after retirement, citing *Schmidt v. WCAB (Fetch),* 140 Pa.Cmwlth. 590, 594 A.2d 812 (1991) and *Patterson–Kelly Co. v. WCAB (Woodrow),* 137 Pa.Cmwlth. 567, 586 A.2d 1043 (1991), or (2) were retired only because of the work-related injury. *Nabisco v. WCAB (Kelly),* 148 Pa.Cmwlth. 343, 611 A.2d 352 (1992). *Henderson,* 669 A.2d at 912–13.

The *Henderson* Court next noted that this Court had addressed the effect of voluntary retirement in an occupational disease case decided after the Commonwealth Court's decision in *Henderson,* i.e., *Republic Steel Corp. v. WCAB (Petrisek),* 537 Pa. 32, 640 A.2d 1266 (1994). The employer in *Petrisek* had claimed that the claimant had voluntarily retired and had no intention of returning to the workforce, and therefore, suffered no wage loss and was not entitled to compensation benefits. The *Henderson* Court noted that *Petrisek* was instructive, notwithstanding the distinction between injury and occupational disease, because *Petrisek* summarized "the controlling principles which guide our analysis." The Court quoted those controlling principles from *Petrisek,* as follows:

In Pennsylvania, disability under the [Workmen's Compensation] Act has always been synonymous with loss of earning power.

. . . .

*Unora* [*v. Glen Alden Coal Co.,* 377 Pa. 7, 104 A.2d 104 (Pa.1954)] clearly established that entitlement to benefits under the Act is contingent upon proof that the claimant suffered an injury or disease in the work place *and* the injury or disease affects his or her ability to earn a wage.

. . . .

A disability which forces a claimant out of the work force and into retirement is compensable under the Act. But, where the claimant suffers a disability which has no effect upon his earning power, no entitlement to benefits arises under the Act.

. . . .

Accordingly, as . . . this claimant offered no evidence that he was forced into compulsory retirement due to his disabling occupational disease, but rather, voluntarily retired from the work force in 1981, he is not entitled to benefits under the Workmen's Compensation Act. Benefits under the Act will only be permitted where the disabling, work related injury or disease results in a loss of earning power.

*Henderson,* 669 A.2d at 913 (quoting *Petrisek,* 640 A.2d at 1268–70 (emphasis in original; footnote omitted)). Applying the principles derived from *Petrisek,* the *Henderson* Court agreed with the referee that the claimant's entitlement to benefits ended when he elected to leave the workforce: "[D]isability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement. The mere possibility that a retired worker may, at some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability." *Henderson,* 669 A.2d at 913. The Court explained that "[a]n employer should not be required to show that a claimant has no intention of continuing to work; such a burden of proof would be prohibitive." Accordingly, the Court held that "[f]or disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury." Turning to the evidence presented in *Henderson,* the Court noted that the claimant had testified that he was not seeking employment, and therefore, the referee correctly concluded that his compensable disability ceased and compensation benefits must be suspended. "The speculative possibility that circumstances might change in the future does not alter the case. If circumstances subsequently change in fact, a claimant might then be entitled to yet another change in his disability status." *Id.*

Employer maintains that *Henderson* established a presumption of retirement arising from the mere fact of seeking a pension, and that such a conclusion was reinforced by the *Hensal* court. *See Hensal,* 948 A.2d at 910 ("Where, as here, a claimant accepts a pension, our Supreme Court, in [*Henderson*], held that the claimant is presumed to have left the workforce entitling an employer to a suspension of benefits unless he establishes that (1) he is seeking employment or (2) the work-related injury forced him to retire."). But, as our description of *Henderson* above should make clear, both Employer and the *Hensal* court have misread the decision. It is true that *Henderson* did not distinguish among types of

pensions, which may partially explain why the *Hensal* court held that a presumption of retirement arises from acceptance of any pension. But, *Henderson* did not purport to address issues that might arise with different pensions. More importantly, *Henderson* never discussed rebuttable presumptions (much less did it purport to establish any)—indeed, the Court never invoked the word presumption—nor was the *Henderson* decision premised upon the mere or sole fact of that claimant's acceptance of a pension. Rather, the *Henderson* Court looked at all of the evidence presented on the question of whether the claimant there had voluntarily retired at the relevant time, including the worker's acceptance of a retirement pension from his employer, his acceptance of Social Security retirement benefits, and, importantly, his explicit admission that he was not then seeking employment.[13] Notably, in that analysis there was no discussion concerning, or any holding respecting, the preliminary question of how to properly raise an issue of whether the claimant had removed himself from the workforce—*i.e.*, how may the employer make that an issue— beyond the Court's implicit disapproval of the notion that an "unequivocal statement" from the claimant that he had no intention of seeking future employment was required. Instead, the *Henderson* Court accepted the dispute and facts as they presented themselves, and addressed the specific issue that was in dispute—*i.e.*, whether the facts adduced proved that the compensable disability had ceased.

Two practical points may be derived from *Henderson* in favor of Employer's general position. The first is *Henderson*'s disapproval of the Commonwealth Court decisions requiring an "unequivocal statement" from the claimant. And, second, *Henderson* recognized that an employer cannot have the "prohibitive" burden of proving that the claimant has no intention of continuing to work; rather, *Henderson* teaches, when the employer presents sufficient evidence to establish that the claimant may have retired from the workplace, it is

13. Employer's reliance on *Shannopin Mining Co. v. WCAB (Turner)*, 714 A.2d 1153 (Pa.Cmwlth.Ct.1998) and *(Weis)*, *supra*, is misplaced, as in both cases, the fact that the claimant was retired from the entire workforce was not disputed.

the claimant who must show that he or she is seeking employment following retirement from his or her employer, or that he or she was forced into retirement because of the work injury. But these logical evidentiary teachings, which indeed may place some evidentiary burden upon the claimant in an appropriate case, are a far cry from reading *Henderson* as if it established a rebuttable presumption of voluntary retirement arising from the mere fact of accepting a pension.

In the case *sub judice,* the Commonwealth Court plurality properly evaluated *Henderson* insofar as it recognized that the WCJ must consider other evidence in addition to the claimant's simple receipt of a pension to determine whether a claimant in fact has retired from the workforce totally. In this regard, the plurality's "totality of the circumstances" test is simply another way of saying that the factfinder must evaluate all of the relevant evidence in determining whether a worker has retired from the workforce. This conclusion is consistent with our reasoning in *Henderson* and therefore, in our view, the plurality did not impermissibly establish a new test. Furthermore, and in answer to the specific question accepted for review, it necessarily follows that, when all of the evidence is in (including evidence from the claimant if a showing has been made of apparent voluntary withdrawal from the workforce) the employer, the moving party seeking to suspend benefits, bears the ultimate burden of proving that the claimant has voluntarily removed himself or herself from the workforce.

We will take this opportunity to make clear the analytical paradigm that applies in cases involving an employer's petition to suspend or modify benefits premised upon the claimant's alleged voluntary withdrawal from the workforce, as evidenced only by acceptance of a pension. Where the employer challenges the entitlement to continuing compensation on grounds that the claimant has removed himself or herself from the general workforce by retiring, the employer has the burden of proving that the claimant has voluntarily left the workforce. There is no presumption of retirement arising from the fact that a claimant seeks or accepts a

pension, much less a disability pension; rather, the worker's acceptance of a pension entitles the employer only to a permissive inference that the claimant has retired. Such an inference, if drawn, is not on its own sufficient evidence to establish that the worker has retired-the inference must be considered in the context of the totality of the circumstances. The factfinder must also evaluate all of the other relevant and credible evidence before concluding that the employer has carried its burden of proof.

If the employer produces sufficient evidence to support a finding that the claimant has voluntarily left the workforce, then the burden shifts to the claimant to show that there in fact has been a compensable loss of earning power. Conversely, if the employer fails to present sufficient evidence to show that the claimant has retired, then the employer must proceed as in any other case involving a proposed modification or suspension of benefits.

■ Our holding will not impose a prohibitive burden on employers, nor does it subject employers to the unreasonable task of proving the claimant's state of mind. Nor are we convinced that the dire consequences predicted by Employer—that claimants will impermissibly benefit by supplementing their retirements with workers' compensation benefits, and that the cost containment goal of the Act will be undermined-will result. If an employer is convinced that a claimant has retired, the employer may present evidence to establish that status. As the Commonwealth Court suggested, the employer may do so by objective facts, including the claimant's receipt of a pension, the claimant's own statements relating to voluntary withdrawal from the workforce, and the claimant's efforts or non-efforts to seek employment.

■ In this case, in maintaining that it presented sufficient proof to show that Claimant had retired, Employer relies on the fact that Claimant applied for and accepted disability pension benefits; the presumption it gleaned from *Henderson* respecting that fact, a reading and position we have disapproved; the fact that Claimant received a disability pension

for many years without seeking new employment; and the fact that Claimant did not submit evidence showing that she was physically or vocationally incapable of performing any work. As we have explained above, receipt of a pension does not establish on its own the fact of a claimant's retirement from the workforce. In this case, the disability pension only shows withdrawal from the Claimant's time-of-injury job. Moreover, the Commonwealth Court plurality accepted the WCJ's factual finding that Petitioner was seeking employment, and that she would have been working had the Employer not terminated her modified-duty job. Finally, the fact that claimant did not submit evidence showing that she was unable to work does not prove voluntary retirement, especially in light of the Employer's own medical testimony regarding Claimant's physical limitations, and the absence of evidence of available work within her restrictions or expert testimony regarding her earning power.[14] We agree with the tribunals below that these circumstances do not prove that Claimant intended to withdraw from the entire workforce. Consequently, the Commonwealth Court properly affirmed the Board's order.

Order affirmed.

Justice ORIE MELVIN did not participate in the decision of this case.

Justice SAYLOR, EAKIN and BAER, Justice TODD and Justice McCAFFERY join the opinion.

---

**14.** *See* footnote 4, *supra.*