# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Kett,                          :
                                      :
                    Petitioner        :
                                      :
          v.                          : No. 667 C.D. 2019
                                      : Submitted: October 25, 2019
Workers' Compensation Appeal          :
Board (Consolidation Coal             :
Company),                             :
                                      :
                    Respondent        :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED: August 19, 2020


Thomas Kett (Claimant) petitions for review of the May 7, 2019 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting the petition to suspend benefits filed by Consolidation Coal Company (Employer). We affirm.

On September 19, 2005, Claimant injured his left knee while in the course and scope of his employment as a belt man for Employer. Employer issued a notice of compensation payable acknowledging a medial meniscus tear of Claimant's left knee. Claimant underwent a partial knee replacement on January 23, 2007, and returned to work a few months later. He underwent a total knee replacement on October 30, 2012. He did not return to work, and he received temporary total disability benefits.

On July 11, 2016, Claimant filed reinstatement and penalty petitions, alleging that Employer unilaterally stopped paying compensation on May 20, 2013. Employer filed an answer to each petition denying those allegations.

On July 22, 2016, Employer filed a petition to suspend Claimant's benefits, alleging that Employer offered Claimant work within his physical restrictions as of May 16, 2013, and, further, that Claimant voluntarily removed himself from the workforce as of May 29, 2013. Claimant filed an answer to the suspension petition, and the petitions were consolidated for hearings before the WCJ.

At the October 7, 2016 hearing, Claimant testified that he was off work due to the work injury from September 20, 2005, to July 8, 2006, and then returned to his regular job as a belt man. Reproduced Record (R.R.) at 87a. He stated that he continued to have problems with his knee and had a partial knee replacement in the beginning of 2007. *Id.* at 88a. Claimant said he returned to work after a few months but stopped working again in October 2012, when he underwent a total knee replacement. *Id.* at 88a-89a.

Claimant acknowledged that he received a letter from Andrea Weber, a workers' compensation administrator, offering him his regular job. R.R. at 89a. Claimant testified that he did not accept Employer's job offer, but instead informed Scott Duvall, a safety employee, that he intended to retire. *Id.* at 90. Claimant explained that, at the time, he was still experiencing tightening and pain in his left knee and was having difficulty walking, and the belt work positions required crawling and kneeling. *Id.* at 90a, 100a. After taking accumulated sick leave, Claimant applied for his pension and social security disability benefits. *Id.* at 91a-92a. Claimant testified that he continues to have pain and stiffness in his left knee,

2

but he did not seek medical treatment for his knee problems after May 2013. *Id.* at 93a.

Employer presented the February 23, 2017 deposition of Ari Pressman, M.D., an orthopedic surgeon who treated Claimant for his left knee injury from December 1, 2005, through May 23, 2013. Dr. Pressman testified that his physician's assistant (PA) conducted a physical examination of Claimant's left knee on April 26, 2013. R.R. at 51a. The PA's note reflected that Claimant had been discharged from physical therapy; he was to begin a self-directed exercise program; and he was to be reassessed by Dr. Pressman in approximately four weeks. *Id.* at 54a. Dr. Pressman relied on the PA's physical examination of Claimant to evaluate Claimant's ability to return to work, and he completed a physical capabilities checklist on April 26, 2013. *Id.* at 55a.

Dr. Pressman released Claimant to return to work on May 1, 2013. He did not believe that Claimant had achieved maximum medical improvement, and he restricted Claimant from crawling or kneeling, lifting more than 75 pounds, and standing for more than five to eight hours. R.R. at 55a. Dr. Pressman next saw Claimant on May 23, 2013. *Id.* at 57a. He testified that Claimant did not complain about his left knee during that visit, and x-rays of Claimant's left knee taken on that date looked normal. Dr. Pressman stated that the primary reason for Claimant's last visit involved pain in his right shoulder and difficulty gripping with his right hand.

Weber testified that she was a workers' compensation administrator for Healthsmart and was responsible for Employer's workers' compensation claims. Weber testified that she received the physical capabilities checklist from Dr. Pressman on May 9, 2013. R.R. at 116a. She forwarded that information to

3

Employer's human resources person and asked if Employer would be able to accommodate Claimant's restrictions. *Id.* at 117a. She then informed Claimant that Employer would be able to accommodate the restrictions reflected on Dr. Pressman's physical capabilities checklist, and she confirmed that information in a letter to Claimant. *Id.* at 117a-18a. Weber said that Claimant subsequently informed her that he decided not to return to work under Dr. Pressman's restrictions, but planned to retire and take his pension. *Id.* at 119a.

Employer submitted into evidence a May 10, 2013 letter from Weber to Claimant, which was accompanied by a Notice of Ability to Return to Work and Dr. Pressman's physical capabilities checklist. R.R. at 38a-39a. Employer also presented a copy of emails between Weber and Employer's human resources employee Timothy O'Neal, who affirmed that Employer could accommodate Claimant's restrictions but did not provide any details. *Id.* at 68a.

The WCJ found the testimony of Claimant, Dr. Pressman, and Weber credible. In relevant part, the WCJ found that Employer violated the Workers' Compensation Act[1] by unilaterally suspending Claimant's benefits on May 30, 2013. The WCJ granted Claimant's reinstatement and penalty petitions, finding that Claimant was entitled to temporary total disability benefits from May 30, 2013, through October 6, 2016.

Additionally, the WCJ found that Claimant was notified that Dr. Pressman released him to return to work, he received an offer to return to his regular job, and he elected to retire. Consequently, the WCJ granted Employer's petition and suspended Claimant's indemnity benefits as of October 6, 2016, when Claimant voluntarily removed himself from the workforce.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

4

Claimant and Employer appealed to the Board. Claimant argued that the WCJ erred in failing to place the burden on Employer to show by a totality of the circumstances that Claimant withdrew from the workforce. Employer argued that the WCJ erred in using the date of Claimant's testimony, October 7, 2016, as his retirement date, when Claimant had not worked since May 2013.[2] The Board affirmed the WCJ's decision and concluded that, considering the totality of the circumstances, the WCJ's determination that Claimant retired and withdrew from the workforce was supported by substantial, competent evidence. Claimant now appeals to this Court.[3]

We note that where a claimant has been forced into retirement as a result of a work injury, the claimant may continue to receive workers' compensation benefits. *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson)*, 669 A.2d 911, 913 (Pa. 1995). However, when a claimant voluntarily leaves the labor market, rather than being forced into retirement because of a work injury, the claimant is not entitled to ongoing indemnity benefits and the employer has grounds to seek a suspension. *Id.; Turner v. Workers' Compensation Appeal Board (City of Pittsburgh)*, 78 A.3d 1224, 1228 (Pa. Cmwlth. 2013).

---

[2] The WCJ explained that, because Claimant credibly testified that his job involved crawling and kneeling, Dr. Pressman specifically disapproved those activities, and Employer did not elaborate on the accommodations that would be offered, the record did not establish that work was available within Claimant's limitations on or after May 29, 2013. The Board affirmed, and Employer does not continue this argument on appeal.

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n.2 (Pa. Cmwlth. 2003).

An employer seeking a suspension of benefits based on the claimant's retirement must establish that the claimant has voluntarily withdrawn from the workforce. The employer must demonstrate, by a totality of the circumstances, that the claimant has chosen not to return to work. *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson) (Robinson II)*, 67 A.3d 1194, 1209 (Pa. 2013).[4] The employer may do so by using such evidence as the claimant's acceptance of a pension, the claimant's own statements relating to voluntary withdrawal from the workforce, and the claimant's efforts or non-efforts to seek employment. *Id.* at 1210; *Turner*, 78 A.3d at 1231.

Once the employer produces sufficient evidence to support a finding that the claimant has voluntarily withdrawn from the workforce, the burden shifts to the claimant to show a compensable loss of earning power. *Robinson II*, 67 A.3d at 1209-10.[5] The claimant does this by proving either that he was looking for

---

[4] In *Robinson II*, the Supreme Court explained that the "totality of the circumstances" was not a new test, but was simply another way of stating that the factfinder must evaluate all of the relevant evidence in determining whether an employee had retired from the workforce.

[5] The Court explained:

> There is no presumption of retirement arising from the fact that a claimant seeks or accepts a pension[;] rather, the worker's acceptance of a pension entitles the employer only to a permissive inference that the claimant has retired. Such an inference, if drawn, is not on its own sufficient evidence to establish that the worker has retired - the inference must be considered in the context of the totality of the circumstances. The factfinder must also evaluate all of the other relevant and credible evidence before concluding that the employer has carried its burden of proof.
>
> If the employer produces sufficient evidence to support a finding that the claimant has voluntarily left the workforce, then the burden shifts to the claimant to show that there in fact has been a

**(Footnote continued on next page…)**

6

work after retirement or that he was forced out of the labor market because of his work injury. *Id.* at 1209; *Henderson*, 669 A.2d at 913. To establish the latter, a claimant must demonstrate that he is forced out of the entire labor market, not just his pre-injury job. *Day v. Workers' Compensation Appeal Board (City of Pittsburgh)*, 6 A.3d 633, 638 (Pa. Cmwlth. 2010).

Claimant argues that the Board erred in affirming the suspension of benefits. Claimant contends that the totality of the circumstances does not establish that he voluntarily left the workforce and that the WCJ relied solely on his acceptance of a retirement pension to determine that he voluntarily retired. Claimant also asserts he had no duty to present evidence that he sought work until Employer met its burden to show that he voluntarily removed himself from the workforce or was capable of returning to suitable employment. Additionally, Claimant argues that the Board improperly relied on *Day* because that decision relied on a presumption of retirement based on the claimant's acceptance of a pension.

Employer acknowledges that receipt of a pension alone is insufficient to meet an employer's burden of proof. However, Employer argues that under *Robinson II*, the receipt of a pension entitles the employer to a permissive inference that, combined with the other relevant and credible evidence, may satisfy

---

**(continued…)**

> compensable loss of earning power. Conversely, if the employer fails to present sufficient evidence to show that the claimant has retired, then the employer must proceed as in any other case involving a proposed modification or suspension of benefits.

67 A.3d at 1209-10.

7

the employer's burden. Employer asserts that in this case, the WCJ relied on Claimant's receipt of a pension, Claimant's consistent testimony that he retired, a lack of medical evidence showing that Claimant was forced out of the workforce, and a lack of evidence that Claimant looked for work after May 2013 to support the conclusion that Claimant voluntarily withdrew from the workforce. Employer also argues that the Board correctly relied on the Supreme Court's decision in *Robinson II* in affirming the WCJ's decision.

Initially, Claimant misunderstands an employer's burden under *Robinson II*. The Court expressly stated:

> If an employer is convinced that a claimant has retired, the employer may present evidence to establish that status. As the Commonwealth Court suggested, the employer may do so by objective facts, including the claimant's receipt of a pension, the claimant's own statements relating to voluntary withdrawal from the workforce, and the claimant's efforts or non-efforts to seek employment.

67 A.3d at 1210. Further, Claimant's contention that the WCJ's decision is not supported by substantial evidence is belied by the record. Claimant testified that he worked as a belt man for Employer "[u]ntil [he] retired." R.R. at 88a. When asked if he accepted the offer to return to his regular job, Claimant said, "No. I retired." *Id.* at 89a. Claimant now emphasizes that he could not return to his pre-injury job without modifications, but he disregards Dr. Pressman's approval of his return to modified work. Contrary to Claimant's assertions, the evidence was sufficient to satisfy Employer's burden under *Robinson II*.

Moreover, the Board correctly stated that once the burden shifts to a claimant, the claimant must prove he either was still looking for work or was forced out of the entire workforce by his work injury. *Robinson II*, 67 A.3d at

8

1209; *Day*, 6 A.3d at 638. In *Robinson II*, the Supreme Court reaffirmed that the employer need not prove the availability of suitable work in a circumstance where the claimant voluntarily removes himself from the labor market through retirement. "To the contrary, when a claimant has retired, the claimant bears the burden of showing *either that her work-related injury forced her out of the entire workforce*, or that she is seeking employment after retirement." *Robinson II*, 67 A.3d at 1198 (emphasis added). The Supreme Court expressly acknowledged that a claimant who has voluntarily retired and is not seeking some type of employment must prove that the work injury forced him to withdraw from the *entire* workforce. To the extent Claimant interprets the Board's analysis differently, his argument fails.

Claimant offered no evidence that he looked for work after leaving his job with Employer or that he was forced out of the entire labor market because of his work injury. Indeed, according to his testimony, Claimant did not seek medical treatment for his left knee after May 2013. R.R. at 93a.

Upon review, we conclude that the evidence credited by the WCJ, including Claimant's testimony, Dr. Pressman's medical opinion, and Claimant's receipt of his pension, supports the WCJ's findings that Claimant voluntarily withdrew from the workforce. The burden then shifted to Claimant to prove that he was looking for work or that his work injury forced him out of the entire workforce. Claimant offered no relevant testimony to meet that burden. Thus, the evidence comprising the "totality of the circumstances" supports the WCJ's finding that Claimant voluntarily withdrew from the workforce. Consequently, the WCJ properly granted Employer's suspension petition, and the Board did not err in affirming the WCJ's order.

9

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Kett,                      :

                           :

               Petitioner  :

                           :

        v.                :  No. 667 C.D. 2019

                           :

Workers' Compensation Appeal  :

Board (Consolidation Coal    :

Company),                 :

                           :

            Respondent :

## O R D E R

AND NOW, this <u>19th</u> day of <u>August</u>, 2020, the order of the Workers' Compensation Appeal Board, dated May 7, 2019, is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge