**Nancy TURNER, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PITTSBURGH), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted July 19, 2013.

Decided Oct. 16, 2013.

Lawrence R. Chaban, Pittsburgh, for petitioner.

Melissa C. Petersen, Pittsburgh, for respondent, City of Pittsburgh.

BEFORE: PELLEGRINI, President Judge, and SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Nancy Turner (Claimant) petitions for review of the March 1, 2013 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting a suspension petition filed by the City of Pittsburgh (Employer). We now vacate and remand.

On February 5, 1994, Claimant was involved in a motor vehicle accident in the course and scope of her employment as a police officer for Employer. As a result of this accident, Claimant sustained injuries to her neck, left shoulder, back, right wrist, and right knee. (Notice of Compensation Payable (NCP), Reproduced Record (R.R.) at 72a–73a.) Claimant subsequently returned to work at a modified-duty job in Employer's identification department, and she received Heart and Lung Act[1] bene-

---

1. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638. The Heart and Lung Act

fits in lieu of workers' compensation from February 6, 1994, through August 27, 2003. Claimant continued to work the modified-duty job until Employer discontinued its light-duty program in 2003. (WCJ's Findings of Fact Nos. 1–5.)

As set forth in the NCP issued by Employer on April 11, 2005, Claimant's Heart and Lung Act benefits were converted to workers' compensation benefits as of August 28, 2003, based on a medical determination that "Claimant's injury is of a lasting and indefinite nature, such that [she] will not be able to return to [her] job" and "based on the Claimant's acceptance of a disability retirement through [Employer]." (R.R. at 73a.) Claimant did not look for other work thereafter.

Following an independent medical examination (IME) of Claimant on June 12, 2007, Employer sent Claimant a notice of ability to return to work (NARW) dated June 21, 2007.[2] On August 8, 2007, Employer filed a petition to suspend Claimant's compensation benefits alleging that Claimant had "voluntarily removed herself from the workforce/labor market as she is physically capable of performing light duty or modified work and yet has not sought employment." (R.R. at 3a.) Claimant filed an answer denying the allegation in Employer's suspension petition and asserting that she "was put out of the work force involuntarily by [Employer] and would otherwise continue to work. Additionally [she] has not otherwise removed herself from employment." (R.R. at 5a.)

The matter was assigned to a WCJ who held multiple hearings. Claimant testified to the facts described above. Claimant stated that she continues to suffer from a burning pain in her neck, which radiates down her left arm and into her left hand, left shoulder pain, and low back pain. (R.R. at 25a–26a.) Claimant added that she continues to undergo physical therapy as prescribed by an orthopedic surgeon. (R.R. at 42a.) On cross-examination, Claimant agreed that she was capable of performing some level of work, such as the work she previously did in Employer's identification department. (R.R. at 37a–38a.) Claimant also acknowledged that she did not look for work immediately following her retirement. (R.R. at 41 a.) However, Claimant testified that she would not have applied for a disability pension if her job had not been removed. (R.R. at 36a.)

Claimant also stated that after receiving the NARW, she enrolled in a skills-training program entitled "New Choices, New Options" at the Community College of Allegheny County. (R.R. at 34a.) This program ran for eight weeks, meeting four days per week, for four hours per day, and taught individuals how to write resumes and participate in interviews. (R.R. at 34a–35a.) Claimant completed the program on November 1, 2007. (R.R. at 35a.)

---

provides full salary to police officers injured on the job.

**2.** Section 306(b)(3) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(3), requires the employer to provide a NARW as a prerequisite to seeking a modification or suspension of benefits, stating as follows:

If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice, on a form prescribed by the department, to the claimant, which states all of the following:
(i) The nature of the employe's physical condition or change of condition.
(ii) That the employe has an obligation to look for available employment.
(iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.
(iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.

Claimant then tested to enter into an office technology program at the Bidwell Training Center.[3] *Id.*

Employer presented the deposition testimony of Deborah Curry, a senior claims examiner for UPMC WorkPartners, the third-party administrator for Employer's workers' compensation program. Curry explained that Employer discontinued its transitional-duty program in 2003 and instituted a new program in 2005. (R.R. at 105a.) Curry testified that this new program was only available to active employees and that Claimant, having retired with a disability pension in 2003, was not eligible to participate. (R.R. at 100a–01a.) However, Curry noted that a retired employee may return to a full-duty job with Employer, assuming he or she qualifies for the position. (R.R. at 107a.)

Employer also presented the deposition testimony of Nasimulla Rehmatullah, M.D., a board-certified orthopedic surgeon who examined Claimant on June 12, 2007. Dr. Rehmatullah testified that his physical examination of Claimant was essentially benign, but noted some tenderness on the left side of Claimant's neck, left trapezius, and lower back. (R.R. at 136a–37a.) Dr. Rehmatullah also described Claimant's neurological examination as normal. (R.R. at 137a.) Dr. Rehmatullah opined that, despite some mild residuals relating to her original work injuries, Claimant was capable of returning to her pre-injury job as a police officer without restrictions. (R.R. at 138a–39a.) However, Dr. Rehmatullah qualified his opinion by stating that if the 1994 injury to Claimant's right-knee resulted in her surgery, he would release her to light-duty work only. (R.R. at 142a–43a.) Dr. Rehmatullah noted that a right knee injury was never mentioned in a treatment course after the work injury and

that the surgery was not until many years later. (R.R. at 147a.)

By decision dated January 16, 2009, the WCJ granted Employer's suspension petition. The WCJ accepted Claimant's testimony as generally credible. However, the WCJ rejected her allegation that she had not voluntarily withdrawn from the workforce "as she clearly has work capabilities and has admittedly not looked for work since retiring." (WCJ's Finding of Fact No. 19; R.R. at 171a.) The WCJ also accepted the testimony of Curry and Dr. Rehmatullah as credible and persuasive. The WCJ found that, because Claimant retired and was no longer an active employee, Employer was not required to offer Claimant a return to her regular job or a new light-duty position. Thus, the WCJ concluded that Employer met its burden of establishing that Claimant voluntarily withdrew from the workforce and was still capable of performing at least light-duty work. The WCJ also concluded that Claimant failed to establish that she had been looking for work following her retirement. Claimant appealed to the Board, which remanded for further findings regarding whether Claimant was forced into retirement because of her work injuries.

On remand, Claimant testified that, at the request of a neighbor, she worked a babysitting job with the YWCA Child Care Partnership for approximately four months beginning in May or June 2009. (R.R. at 59a, 62a.) Claimant testified that she received a 1099 form reflecting her income and she reported her earnings to UPMC Work Partnership. (R.R. at 59a, 64a.) Claimant testified that she was unable to continue performing this job because of excruciating pain in her back, noting that her doctor sent her from his office to an emergency room for treatment around this

---

3. Claimant had not yet heard from the Bidwell Training Center at the time she testified before the WCJ.

time. (R.R. at 59a, 66a.) Claimant stated that she would still be babysitting but for the pain in her back. (R.R. at 67a.)

By decision dated October 19, 2010, the WCJ again granted Employer's suspension petition, effective August 8, 2007. The WCJ concluded that Claimant was capable of performing work within her restrictions, but that she had voluntarily removed herself from the labor market. The WCJ again concluded that Claimant failed to establish that she was forced into retirement because of her work injuries or that she looked for work after her retirement. The WCJ's credibility determinations remained unchanged.

Claimant appealed to the Board, which affirmed. Citing *City of Pittsburgh v. Workers' Compensation Appeal Board (Leonard)*, 18 A.3d 361 (Pa.Cmwlth.2011), *Day v. Workers' Compensation Appeal Board (City of Pittsburgh)*, 6 A.3d 633 (Pa.Cmwlth.2010), and *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson)*, 4 A.3d 1130 (Pa.Cmwlth.2010) (*Robinson I* ), *affirmed,* —— Pa. ——, 67 A.3d 1194 (2013) (*Robinson II* ), the Board stated that after an employer establishes the claimant's receipt of a disability pension and a NARW indicating restored earning power, the burden shifts to the claimant to rebut the presumption that she has voluntarily withdrawn from the workforce. (R.R. at 205a–06a.) The Board noted that Claimant "had no legal obligation to look for work prior to the issuance of the NARW." (R.R. at 208a.) Nevertheless, the Board relied on Claimant's admission that she had no intention of returning to work at the time she accepted her disability pension and the fact that she enrolled in a skills-training program only after receipt of the NARW as substantial evidence to establish that Claimant intended to voluntarily withdraw from the workforce and that Employer had met its burden in this matter. (R.R. at 208a–09a.)

On appeal to this Court,[4] Claimant argues that the Board erred in affirming the WCJ's decision to grant Employer's suspension petition. More specifically, Claimant argues that the WCJ and the Board improperly reasoned that receipt of a NARW and a disability pension is sufficient to raise a presumption that Claimant intended to withdraw from the general workforce. We agree.

■ Generally speaking, an employer seeking a suspension of benefits bears the burden of proving that, although a claimant continues to have residual physical impairment due to the work injury, employment is available to the claimant within his restrictions which would result in no loss of wages to the claimant. *Harle v. Workmen's Compensation Appeal Board (Telegraph Press)*, 540 Pa. 482, 658 A.2d 766 (1995). To establish that such employment is available, the employer needs to present evidence of available positions within the claimant's restrictions. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction)*, 516 Pa. 240, 532 A.2d 374 (1987). The same is true where an employer places a claimant in a modified-duty position and subsequently eliminates that position. *Bethlehem Steel Corporation v. Workers' Compensation Appeal Board (Laubach)*, 563 Pa. 313, 760 A.2d 378 (2000) (holding that when such a situation occurs, the employer must reinstate the claimant's total disability benefits and, if the employer later seeks to modify or suspend these benefits, the employer must show the availability of suitable work).

4. Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

However, an employer is not required to establish job availability where it can demonstrate that the claimant has voluntarily removed himself from the workforce through retirement. *Southeastern Pennsylvania Transportation Authority v. Workers' Compensation Appeal Board (Henderson)*, 543 Pa. 74, 669 A.2d 911 (1995); *Leonard; Day; Robinson I*. In *Henderson*, our Supreme Court stated that "[d]isability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement." 543 Pa. at 79, 669 A.2d at 913. Moreover, the court in *Henderson* held that "[t] he mere possibility that a retired worker may, at some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability." *Id.* Further, the court held that "[f]or disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury." *Id.*

Like Claimant here, the claimant in *Robinson I* was injured in the course and scope of her employment as a police officer for Employer; she received total disability benefits; she later returned to a light-duty position with Employer; and she retired with a disability pension after Employer discontinued its transitional-duty program. Following an IME concluding that the claimant could perform light-duty work, Employer sent the claimant a NARW. Shortly thereafter, Employer filed a petition to suspend the claimant's compensation benefits alleging that the claimant had voluntarily withdrawn from the workforce.

Following hearings, a WCJ denied Employer's suspension petition, concluding that Employer failed to meet its burden of showing the availability of suitable work. The WCJ in *Robinson I* noted that the claimant was forced into retirement after Employer eliminated its transitional-duty program; the WCJ credited her testimony that as soon as she received the NARW from Employer, she reported to the Pennsylvania Job Center. Employer appealed, and the Board affirmed. This Court also affirmed, noting that, although the claimant was no longer capable of performing her pre-injury job, she did not voluntarily remove herself from the workforce, and she continued to look for work. *Robinson I*.

In rendering this decision, we noted our Supreme Court's decision in *Henderson* and its progeny.[5] However, we rejected Employer's attempts to establish a presumption that a claimant who accepts a pension has left the workforce. Instead, we explained that in *Henderson* and the cases that followed, "the claimant's retirement was undisputed or that the totality of the circumstances supported a holding that the claimant had made the decision to retire." *Robinson I*, 4 A.3d at 1135. We noted that the disability pension at issue merely recognized the claimant's inability to "perform her time-of-injury job," not that she had "voluntarily left the entire workforce." *Id.* at 1137. Additionally, we noted the "dual obligations that employers have under the Act as paying benefits and also assisting injured workers to return to the workforce." *Id.* (quoting *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 560 Pa. 618, 626, 747 A.2d 850, 854 (2000)).[6]

---

**5.** *See, e.g., Pennsylvania State University v. Workers' Compensation Appeal Board (Hensal)*, 948 A.2d 907 (Pa.Cmwlth.2008); *Mason v. Workers' Compensation Appeal Board (Joy*

*Mining Machinery)*, 944 A.2d 827 (Pa. Cmwlth.2008).

**6.** We further noted in *Robinson I* the reciprocal obligation that injured workers have to

We concluded in *Robinson I* that "we cannot relieve an employer of its obligation to help a claimant reenter the workforce, by identifying the claimant's residual work abilities and finding available positions within those abilities, unless it is clear from the totality of the circumstances that such efforts would be unavailing." *Id.* In this regard, we stated as follows:

> In order to show that efforts to return a workers' compensation claimant to the workforce would be unavailing because the claimant has retired, the employer must show, by the totality of the circumstances, that the claimant has chosen not to return to the workforce. Circumstances that could support a holding that a claimant has retired include: (1) where there is no dispute that the claimant retired; (2) the claimant's acceptance of a retirement pension; or (3) the claimant's acceptance of a pension and refusal of suitable employment within her restrictions.

*Id.* at 1138.

In affirming the Board's order, we stated as follows:

> In this case, Employer did not provide sufficient evidence to show that, under the totality of the circumstances, Claimant intended to terminate her career. Claimant applied for, and received, a disability pension, which was conditioned on her inability to perform her time-of-injury position. Section 13(5) of the Act of May 22, 1935, P.L. 233, as amended,

53 P.S. § 23656(5). Claimant did not seek a disability pension that precluded her from working or an old-age pension. It is true that Claimant did not return to her modified-duty position after her car accident; however, this is because Employer no longer made the position available to her. Claimant credibly testified that she looked for work after she received the Notice of Ability to Return to Work, which was followed shortly by the Suspension Petition. Claimant looked for work despite being unclear as to her abilities or restrictions resulting from her work-related injuries, and despite the fact that Employer never offered her a position or identified available positions within her abilities or restrictions. These circumstances provide no evidence that Claimant intended to terminate her employment or her career. Indeed, to the contrary, the WCJ specifically found as fact that Claimant would be working if Employer had not eliminated Claimant's modified-duty position. Therefore, Employer failed to carry its burden under *Henderson* to show that Claimant had retired. Because Employer failed to show that Claimant was retired, pursuant to *Kachinski* and Section 306(b)(2) of the Act, we agree with the Board that Employer needed to show the availability of suitable work within Claimant's restrictions and abilities to sustain its burden on the Suspension Petition.

---

cooperate with the employer's efforts in this regard, quoting the following from *Landmark Constructors*:

> [B]ecause of the Act's humanitarian objectives, an employer must do more than simply pay employees benefits for work-related injuries. In order to make the employee whole, the employer must try to reintroduce into the workforce those employees injured while pursuing the employer's interests.
>
> Our decision in *Kachinski* also recognized that the employer's obligation is not with-

out limits. The Act places upon the employee a reciprocal obligation to make his or her best efforts to return to the workforce. Thus, employees must cooperate with employers' attempts to return them to the workforce by making themselves available for appropriate employment, whether with the employer or with a substitute employer.

*Robinson I*, 4 A.3d at 1137 (quoting *Landmark Constructors*, 560 Pa. at 626, 747 A.2d at 854).

*Id.* at 1138–39 (citations omitted). Once again, Employer appealed.

Our Supreme Court granted allocator, limited to the following issue:

> Did the Commonwealth Court err by holding that, in a petition to suspend compensation benefits based upon an alleged voluntary withdrawal from the workforce, the employer bears the burden of showing by the totality of the circumstances that the claimant has chosen not to return to the workforce?

*Robinson II,* —— Pa. at ——, 67 A.3d at 1200.

Our Supreme Court quoted our decision in *Robinson I* extensively and ultimately affirmed this Court's adoption of the totality of the circumstances standard. Relying on *Henderson,* Employer again asserted that a claimant's separation from employment and acceptance of a pension creates a presumption that the claimant has voluntarily withdrawn from the workforce. However, in *Robinson II,* the court specifically rejected any interpretation of *Henderson* as establishing a rebuttable presumption that a claimant has retired if the claimant accepts any type of pension. Instead, the court noted that *Henderson* "did not purport to lay down any such broad rule, and the holding in that case, like the holdings in all cases, must be read against its facts and the issues actually joined." *Robinson II,* —— Pa. at ——, 67 A.3d at 1206. The court went on to note that the claimant in *Henderson* had accepted a retirement pension and Social Security retirement benefits and had testified that he was not seeking employment following his retirement. Further, the court in *Robinson II* noted that *Henderson* neither distinguished among types of pensions nor discussed rebuttable presumptions.

The Supreme Court stated that "we do not believe it self-evident, or even logical to presume, from the simple fact that a claimant accepts a pension, a conclusion that the claimant has completely and voluntarily withdrawn from the workforce, or is prohibited from working in any capacity." *Robinson II,* —— Pa. at ——, 67 A.3d at 1205. Similar to our decision in *Robinson I,* the court emphasized that the claimant's receipt of a disability pension merely represented an inability to "perform her time-of-injury position" and was not indicative of a decision to "forgo all employment." *Id.* The court concluded that, at most, a claimant's receipt of a pension could give rise to a permissive inference that a claimant is retired, which "was just one fact of many possible probative facts that must be considered in determining whether the claimant has voluntarily withdrawn from the workforce." *Robinson II,* —— Pa. at ——, 67 A.3d at 1206.

The court described a "permissive inference" as "no more than a logical tool enabling the trier of fact to proceed from one fact to another, if the trier of fact believes that the weight of the evidence and the experiential accuracy of the inference warrants so doing.... The trier of fact can reject the inference in whole or in part." *Robinson II,* —— Pa. at ——, 67 A.3d at 1204. In addition, the court explained that there is *no burden shifting* with a permissive inference and that the burden of persuasion remained with the employer to persuade the trier of fact that "the suggested conclusion should be inferred based on the predicate facts proved." *Id.* (citations omitted). The court added that such an inference, on its own, is not sufficient to meet the employer's burden.

Furthermore, in *Robinson II,* the court approved this Court's "totality of the circumstances" analysis as "simply another way of saying that the fact-finder must evaluate all of the relevant evidence in determining whether a worker has retired from the workforce." *Robinson II,* —— Pa. at ——, 67 A.3d at 1209. The court

then clarified "the analytical paradigm that applies in cases involving an employer's petition to suspend or modify benefits premised upon the claimant's alleged voluntary withdrawal from the workforce, as evidenced only by acceptance of a pension," stating as follows:

Where the employer challenges the entitlement to continuing compensation on grounds that the claimant has removed himself or herself from the general workforce by retiring, the employer has the burden of proving that the claimant has voluntarily left the workforce. *There is no presumption of retirement arising from the fact that a claimant seeks or accepts a pension, much less a disability pension;* rather, the worker's acceptance of a pension entitles the employer only to a permissive inference that the claimant has retired. Such an inference, if drawn, is not on its own sufficient evidence to establish that the worker has retired—*the inference must be considered in the context of the totality of the circumstances. The factfinder must also evaluate all of the other relevant and credible evidence before concluding that the employer has carried its burden of proof.*

If the employer produces sufficient evidence to support a finding that the claimant has voluntarily left the workforce, then the burden shifts to the claimant to show that there in fact has been a compensable loss of earning power. Conversely, if the employer fails to present sufficient evidence to show that the claimant has retired, then the employer must proceed as in any other case involving a proposed modification or suspension of benefits.

Our holding will not impose a prohibitive burden on employers, nor does it subject employers to the unreasonable task of proving the claimant's state of mind. Nor are we convinced that the dire consequences predicted by Employer—that claimants will impermissibly benefit by supplementing their retirements with workers' compensation benefits, and that the cost containment goal of the Act will be undermined—will result. If an employer is convinced that a claimant has retired, the employer may present evidence to establish that status. As the Commonwealth Court suggested, the employer may do so by objective facts, including the claimant's receipt of a pension, the claimant's own statements relating to voluntary withdrawal from the workforce, and the claimant's efforts or non-efforts to seek employment.

*Robinson II*, —— Pa. at ——, 67 A.3d at 1209–10 (emphasis added).

In the present case, both the WCJ and the Board relied on the fact that Claimant had applied for and accepted a disability pension from Employer, and both applied a presumption gleaned from *Henderson* to conclude that Employer met its burden of establishing that Claimant had voluntarily withdrawn from the workforce. Given our Supreme Court's recent decision in *Robinson II*, which specifically rejected any such presumption from *Henderson*, we must conclude that such reliance was in error. As the court in *Robinson II* made clear, the receipt of any type of pension does not raise a presumption that a claimant retired from the workforce, and, here, Claimant's receipt of a disability pension merely shows Claimant's inability to perform her time-of-injury job.[7] Thus, a remand to the

7. As this author observed in *Day:*

[I]t is important to clarify that receipt of a pension is not the factual or legal equivalent of retirement, or withdrawal from the workforce, in every case. It is true that in most instances an employee must withdraw from his employer's work force in order to be eligible for a pension. However in many instances, such as the present matter, that is not the case.

Where, as here, the employee has been laid off, the employer has effectively removed

WCJ is necessary for reconsideration of the existing record in light of the clarified burden of proof set forth in *Robinson II.*[8]

Accordingly, the order of the Board is vacated and the matter is remanded to the Board, with specific instructions to remand to the WCJ, for further findings consistent with this opinion.

### ORDER

AND NOW, this 16th day of October, 2013, the order of the Workers' Compensation Appeal Board (Board), dated March 1, 2013, is hereby vacated. The matter is remanded to the Board, with specific instructions to remand to the Workers' Compensation Judge, for further findings consistent with this opinion.

Jurisdiction relinquished.

### CONCURRING OPINION BY Judge SIMPSON.

This workers' compensation appeal involves a finding that Nancy Turner (Claimant) voluntarily removed herself from the workforce by retiring. I agree with the majority that the decisions by the compensation authorities should be vacated and remanded to the fact-finder for reconsideration in light of our Supreme Court's recent clarification of the burdens of proof in

*City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson),* —— Pa. ——, 67 A.3d 1194 (2013).

I write separately to specifically address, and reject, an argument made by Claimant. She argues that because she had no legal duty to look for work until she received a Notice of Ability to Return to Work (Notice) in 2007, her failure to look for work for several years after her receipt of disability retirement in 2003 cannot be considered by the fact-finder as a matter of law.

Claimant was injured in early 1994. From 1994 to mid–2003 she worked at a light duty job for her employer, the City of Pittsburgh (Employer). When the light-duty job was discontinued, she accepted a disability retirement. She did not look for other work from mid–2003 until after she received the Notice in 2007.

Because Claimant actually worked a light-duty job with Employer for nine years, she knew that she possessed residual earning capacity. Indeed, she acknowledged she was capable of performing some level of work, such as the light-duty work she previously performed for Employer. Reproduced Record (R.R.) at 37a–38a.

the employee from its workforce, and the application for a pension merely formalizes the circumstances that already exist—the employer has severed the employment relationship in both the factual and the legal sense. Under such circumstances, the receipt of a pension is *not* a separation from the employer's workforce and thus, there is no rational basis for shifting the burden of proof from the employer, affording the employer any presumption, or imposing any duty upon the claimant. Instead, in cases like this, the receipt of a pension is merely one fact for a WCJ to consider in deciding a suspension petition.

. . .

More important, the remedial purpose of the Act cannot be satisfied by an analysis

that excludes consideration of an employer's bankruptcy, an employer's outsourcing of work, an employee's loss of benefits upon being laid off or an employee's ongoing financial needs, any of which might force an employee to apply for a pension irrespective of either his physical ability or his desire to return to work.

*Day,* 6 A.3d at 644–45 (McCullough, J., concurring).

8. Changes in decisional law which occur during litigation will be applied to cases pending on appeal. *McCloskey v. Workmen's Compensation Appeal Board (J.H. France Refractories, Inc.),* 501 Pa. 93, 460 A.2d 237 (1983).

Despite this knowledge, Claimant admitted that she had no intention of returning to work at the time she accepted her disability retirement, R.R. 61a, and that she did not look for work of any kind between her retirement in 2003 and receipt of the Notice in 2007. R.R. at 40a–41a. I believe these circumstances, which tend to establish Claimant's state of mind for the years between 2003 and 2007, are relevant circumstances which may be considered by the fact-finder as part of the "totality of circumstances" analytical paradigm. *Robinson,* —— Pa. at ——, 67 A.3d at 1209.

Claimant's argument that she had no duty to look for work before receipt of the Notice could be a persuasive assertion. However, it should be part of the weight-of-evidence arguments made to the fact-finder, not a *per se* legal rule which artificially restricts the circumstances all fact-finders consider. The propriety of a weight-of-evidence approach is obvious here, where Claimant did not need a Notice to advise her she was able to work. The situation illustrates the need for a more flexible "totality of circumstances" analysis. *Robinson,* —— Pa. at ——, 67 A.3d at 1209.

In sum, I would allow the fact-finder to weigh Claimant's pre-Notice acts, intentions and omissions in deciding whether Claimant retired.