# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Podest,                                          :
                                                     :
                        Petitioner                   :
                                                     :
            v.                                        :   No. 1785 C.D. 2016
                                                     :   Submitted: May 26, 2017
Workers' Compensation Appeal                         :
Board (General Dynamics),                            :
                                                     :
                        Respondent                   :

General Dynamics,                                    :
                                                     :
                        Petitioner                   :
                                                     :
            v.                                        :   No. 1816 C.D. 2016
                                                     :   Submitted: May 26, 2017
Workers' Compensation Appeal                         :
Board (Podest),                                      :
                                                     :
                        Respondent                   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                     **FILED:  September 1, 2017**


Before this Court is the petition for review of John Podest (Claimant) from an October 6, 2016 order of the Workers' Compensation Appeal Board (Board) affirming a March 31, 2016 decision and order of a Workers' Compensation Judge (WCJ) granting a suspension petition brought by General

Dynamics (Employer), Claimant's former employer, on the grounds that Claimant had voluntarily retired from the labor market. Also before this Court is the petition for review of Employer from a May 21, 2015 order of the Board that reversed a November 6, 2013 decision and order of the WCJ, which had granted Employer's modification petition on the grounds that a suitable job offer had been made to Claimant and he had refused the job. We conclude that the WCJ's determination that Claimant had voluntarily left the workforce was supported by substantial evidence, and we therefore affirm the Board's order affirming the WCJ's grant of the suspension petition. In light of our resolution of Claimant's appeal, we need not address Employer's appeal of the reversal of the grant of its modification petition.

On October 30, 2009, while working for Employer as an inspector of mortar shells, Claimant sustained a workplace injury of a bilateral shoulder strain/sprain, which Employer recognized as a work injury under the Workers' Compensation Act[1] through a medical-only notice of compensation payable. (11/6/13 WCJ Decision, Findings of Fact (F.F.) ¶¶1, 4; Nov. 29, 2012 Hearing Transcript (H.T.) at 16, Reproduced Record (R.R.) 357.) At the time of his injury, Claimant was employed at an average weekly wage of $1,037.37 with a compensation rate of $691.58. (11/6/13 WCJ Decision, F.F. ¶2.) On December 16, 2009, the parties entered into a supplemental agreement recognizing that Claimant was disabled from November 2, 2009 to November 9, 2009 and returned to work on November 9, 2009 in a light-duty status with a loss of wages and receiving partial disability benefits. (*Id*., F.F. ¶3.) On May 25, 2010, the parties entered into a supplemental agreement recognizing that Claimant had again

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.1, 2501–2708.

become totally disabled as a result of the October 30, 2009 work injury and with compensation reinstated as of the date of the agreement. (*Id.*, F.F. ¶4.)

On February 16, 2012, Employer filed a petition to modify or suspend Claimant's workers' compensation benefits as of November 2, 2011 based on Claimant's failure to return to work despite a notice of ability to return to work and Employer's offer of suitable work made available to Claimant. (*Id.*, F.F. ¶5.) Employer later verbally amended the suspension petition during a deposition of one of its fact witnesses to also seek a suspension of Claimant's benefits based on his voluntary withdrawal from the workforce.[2] (Rakowicz Dep. at 16, R.R. 85.)

On November 6, 2013, the WCJ issued a decision granting Employer's modification petition, as of January 10, 2012, based on the job offer made for a light-duty, paint-mask cleaner position at Employer. The WCJ determined that the testimony of Lucian P. Bednarz, M.D., who performed an independent medical examination (IME) of Claimant, that Claimant was able to perform light-duty work and specifically the paint-mask cleaner job was more credible than that of Claimant's medical expert, Kurt Moran, M.D. (11/6/13 WCJ Decision, F.F. ¶¶26, 29, 30, Conclusions of Law (C.L.) ¶¶2, 3.) The WCJ also

---

[2] In addition to the modification/suspension petition filed by Employer, Claimant filed a review petition seeking to add additional injuries and a petition to review benefit offset based on Employer's filing of a notice of workers' compensation benefit offset following Claimant's election to receive a disability pension. In the November 6, 2013 decision, the WCJ granted the review petition in part adding the injuries of aggravation of bilateral shoulder arthritis and denied the petition to review benefit offset, concluding that Employer was entitled to an offset of Claimant's full monthly pension benefit amount and a recoupment for pension benefits received prior to the decision. Claimant appealed the WCJ's decision regarding the petition to review benefit offset and the Board affirmed the WCJ's determination. Neither party appealed from the WCJ's decision on the review petition and the review petition and petition to review benefit offset were not addressed in the WCJ's March 31, 2016 remand decision or the October 6, 2016 Board opinion.

3

concluded, based on the testimony of Claimant and Dr. Moran, that Claimant could not perform a medium-duty 120HE welder feed position that was also offered to Claimant by Employer. (*Id*., F.F. ¶¶27, 30.) Therefore, the WCJ determined that Employer was entitled to a modification of Claimant's compensation rate to $82.43 computed based on the difference between the average weekly wage of Claimant's pre-injury position and the average weekly wage of the paint-mask cleaner position. (*Id*., C.L. ¶3.) The WCJ dismissed Employer's suspension petition. (*Id*., Order.)

Both Claimant and Employer appealed the WCJ's decision to the Board. In a May 21, 2015 opinion and order, the Board concluded that the testimony of Employer's Supervisor of Health and Safety Services demonstrated that only one job was offered to Claimant and it would have required him to perform both the paint-mask cleaner and 120HE welder feed job duties; as the WCJ determined that Claimant could not perform the medium-duty welder feed duties, the WCJ erred in granting the modification petition. (5/21/15 Board Opinion at 5-7.) However, the Board also determined that the WCJ failed to address Employer's argument that Claimant's benefits should be suspended based on his voluntary departure from the labor market and therefore remanded to the WCJ for a ruling on Employer's suspension petition. (*Id*. at 7-8.)

On remand, in a March 31, 2016 decision and order, the WCJ granted Employer's suspension petition as of January 10, 2012. The WCJ concluded that Employer had met its burden of showing that the totality of the circumstances demonstrated that Claimant had voluntarily quit the labor market. (3/31/16 WCJ Decision, F.F. ¶11, C.L. ¶¶2, 3.) Specifically, the WCJ noted as factors in support of the finding that Claimant left the workforce that Claimant elected to receive a

4

disability, rather than a regular, pension, the fact that the disability pension was approved by Claimant's union rather than Employer, Claimant's decision to believe the opinion of Dr. Moran over that of Dr. Bednarz, who opined that Claimant was capable of light-duty employment, and the fact that no evidence was presented that Claimant ever intended to continue in the workforce. (*Id*., F.F. ¶11, C.L. ¶2.) Claimant appealed the WCJ's decision, and the Board affirmed. Both Claimant and Employer petitioned for review of the Board's determination with this Court, and the appeals were consolidated by a November 18, 2016 order.

On appeal, Claimant argues that the WCJ erred in granting Petitioner's suspension petition in its March 31, 2016 decision by placing the burden on Claimant to prove that he was continuing to seek employment when the burden should be placed on the employer to demonstrate that the claimant voluntarily withdrew from the labor market under the totality of the circumstances test of *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson)*, 67 A.3d 1194 (Pa. 2013). Claimant contends that the WCJ and Board additionally erred by not recognizing that the collective bargaining agreement (CBA) under which Claimant worked at Employer required him to apply for a disability pension if he is found totally and permanently disabled by a doctor. In addition, Claimant argues that the WCJ erred by relying on the opinion of Dr. Moran over Dr. Bednarz when Dr. Bednarz did not provide his opinion that Claimant could return to work until approximately two years after Claimant applied for the disability pension. Thus, Claimant asserts that a proper review of the totality of the circumstances in fact shows that he did not voluntarily quit the labor market. In its appeal, Employer argues that the Board improperly reversed the WCJ's modification of Claimant's workers' compensation benefits in the November 6,

5

2013 decision because evidence put forth by Employer, including the testimony of its Supervisor of Health and Safety Services and the text of the job offer, shows that Claimant was offered a light-duty paint-mask cleaner position, which Claimant refused. Because the WCJ has the exclusive authority to make findings of fact and resolve disputes in the evidence, Employer argues that the Board exceeded its authority by reversing the WCJ's grant of the modification petition when substantial, competent evidence supported the WCJ's determinations. We first address Claimant's appeal.[3]

Ordinarily, where a claimant has been forced into retirement as a result of a work-related injury, the claimant may continue to receive workers' compensation benefits. *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson)*, 669 A.2d 911, 913 (Pa. 1995); *City of Philadelphia v. Workers' Compensation Appeal Board (Rooney)*, 730 A.2d 1051, 1053 (Pa. Cmwlth. 1999). However, when a claimant voluntarily leaves the labor market, rather than being forced into a compulsory retirement as a result of an injury, the claimant is not entitled to benefits under the Act and the employer has grounds to seek a suspension of benefits. *Henderson*, 669 A.2d 911, 913 (Pa. 1995); *Turner v. Workers' Compensation Appeal Board (City of Pittsburgh)*, 78 A.3d 1224, 1228 (Pa. Cmwlth. 2013).

To establish that the claimant has voluntarily left the workforce, the employer must demonstrate, by the totality of the circumstances, that the claimant

---

[3] This Court's review of an appeal from a determination by the Board is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence and whether Board procedures or constitutional rights were violated. *Chesik v. Workers' Compensation Appeal Board (Department of Military and Veterans' Affairs)*, 126 A.3d 1069, 1074 n. 5 (Pa. Cmwlth. 2015).

6

has chosen not to return to work. *Robinson*, 67 A.3d at 1209. A claimant's receipt of a pension does not create a rebuttable presumption that the claimant has retired from the workforce but does create a presumptive inference that the claimant has decided to leave the job market. *Id.* at 1205-06, 1209; *Chesik v. Workers' Compensation Appeal Board (Department of Military and Veterans' Affairs)*, 126 A.3d 1069, 1076 (Pa. Cmwlth. 2015). Other evidence that the employer may present to show a departure from the labor market include the claimant's own statements relating to voluntary withdrawal and the claimant's efforts or non-efforts in seeking employment. *Robinson*, 67 A.3d at 1210; *Turner*, 78 A.3d at 1231. When the employer presents sufficient evidence that claimant has voluntarily withdrawn from the labor market, the burden shifts to the claimant to show that he is seeking employment following retirement or that he was forced into retirement because of the work injury. *Robinson*, 67 A.3d at 1209-10; *Henderson*, 669 A.2d at 913.

The record reveals the following circumstances relevant to the determination of whether Claimant voluntarily left the workforce. Claimant testified that he was injured on October 30, 2009 and that he returned to work shortly thereafter and attempted to perform a series of modified jobs at Employer with no success. (Nov. 29, 2012 H.T. at 16, 40-41, R.R. 357, 381-82.) Claimant stopped working entirely and began receiving total disability benefits on April 30, 2009, and he has not applied for work anywhere else since that date. (Apr. 29, 2013 H.T. at 31-32, R.R. 282-83; Nov. 29, 2012 H.T. at 42, R.R. 383.) In April 2010, Claimant began treatment with Dr. Moran, who operates an internal medicine, primary care and pain management practice. (Moran Dep. at 6-7, R.R. 11-12.) Dr. Moran referred Claimant to an orthopedist, Dr. Glazer, who examined

Claimant several times during April and May of 2010 to determine if Claimant would be a candidate for surgery, which Claimant elected not to pursue. (Moran Dep. at 9, 12, 21, R.R. 14, 17, 26; Nov. 29, 2012 H.T. at 30, R.R. 371.) At Dr. Glazer's request, Claimant was referred for a functional capacity evaluation, which was performed by Penn Therapy and Fitness on June 14, 2010. (Moran Dep. at 10, R.R. 15.) According to the report of the evaluation, Claimant was functioning in the light classification of work, which would allow him to exert 20 pounds of force on an occasional basis, 10 pounds of force on a frequent basis and would restrict repetitive motions of the upper extremities to an occasional basis. (Moran Dep., Ex. 2 at 2, R.R. 55.)

Dr. Bednarz, who is board certified in physical and rehabilitation medicine, performed his first IME of Claimant on May 12, 2010. (Bednarz Dep. at 3, 7, R.R. 113, 117.) In his report issued following the IME, Dr. Bednarz concluded that Claimant "is clearly capable of returning to full time gainful employment but currently requires medical restrictions in the light to medium duty range." (Bednarz Dep., Ex. 1 at 4, R.R. 136.) Dr. Bednarz performed two additional IMEs of Claimant on December 1, 2010 and November 2, 2011 and stated in the reports that Claimant was able to perform light-to-medium duty work. (Bednarz Dep. at 3, Ex. 2 at 4, Ex. 3 at 4, R.R. 113, 141, 147.) Dr. Bednarz testified at his deposition that Claimant's condition was consistent during each of the three examinations with Claimant showing no progressive or neurological problems that would prevent him from working besides the limitations related to his range of motion deficits in his shoulders. (Bednarz Dep. at 9, 11, 14, R.R. 119, 121, 124.)

8

Claimant applied for Social Security Disability (SSD) benefits on July 27, 2010, and the SSD benefits were granted by a Social Security Administration administrative law judge (ALJ) at a February 13, 2012 hearing. (Ex. D-7, Notice of Decision at 1, R.R. 159.) In a February 21, 2012 decision, the ALJ found Claimant to be disabled as of May 1, 2010 based on "multiple disorders of both shoulders and depression."[4] (*Id*.) At some point subsequent to Claimant's SSD application, he also applied for a disability pension administered by his union, the International Association of Machinists and Aerospace Workers; the disability pension was ultimately awarded and Claimant began receiving the pension of $1,016 per month on March 21, 2012, with an effective date of May 1, 2011. (Ex. D-4, Dec. 18, 2012 Union Letter, R.R. 151; Joint Stipulation ¶¶2, 5, R.R. 163-64; Apr. 29, 2013 H.T. at 35, R.R. 286.) Claimant testified that his union instructed him that he was required to apply for the disability pension under the terms of the CBA because he had been found to be disabled by a doctor. (Apr. 29, 2013 H.T. at 35-37, R.R. 286-88; Nov. 29, 2012 H.T. at 55, R.R. 396.) Article 14(i)(3) of the CBA states:

> Benefits stop at normal retirement eligibility under the [union] pension plan, early retirement and disability retirement. If an employee is found to be totally and permanently disabled by a doctor, he must apply for [the union] Disability Pension. Benefits will be maintained then if employee is denied the disability pension.

---

[4] SSD benefits are available to those who are unable "to engage in any substantial gainful activity" because of a medically determinable impairment which lasts for twelve months or more and is so severe that the individual "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(1)(A), (2)(A).

9

Workers [sic] Compensation benefits terminate at age when employee would become eligible for normal retirement.

(Ex. C-3, CBA Art. 14(i)(3), R.R. 4.)  Claimant testified that he had in fact been found totally disabled by a doctor and that he applied for the disability pension because he "listened to [his] treating physician," but Claimant did not identify which doctor found him totally disabled or produce any report in which he was found disabled.  (Apr. 29, 2013 H.T. at 36, R.R. 287; Nov. 29, 2012 H.T. at 58, R.R. 399.)  On June 11, 2012, Employer sent Claimant a letter notifying him that it had become aware that he was receiving a union disability pension and determined that this was a voluntary quit under the CBA that terminated Claimant's employment and seniority with Employer effective on the date of the letter.  (Ex. C-2, June 11, 2012 Employer Letter, R.R. 1.)

On December 6, 2011, Employer issued a Notice of Ability to Return to Work based on Dr. Bednarz's November 2, 2011 IME report in which he opined that Claimant was able to return to work in a light-to-medium duty capacity.  (Ex. D-1, Notice, R.R. 69.)  Employer sent Claimant a letter on January 6, 2012 which offered him one of two positions within the restrictions set by Dr. Bednarz as either a paint-mask cleaner or a 120HE welder feed.  (Rakowicz Dep. at 4-5, Ex. 1, R.R. 73-74, 107-09.)  Claimant informed Employer that he would have to check with Dr. Moran before accepting either position, and he ultimately informed Employer that he could not take either job.  (Rakowicz Dep. at 6, R.R. 75; Nov. 29, 2012 H.T. at 46-48, R.R. 387-89.)  At his deposition, Dr. Moran testified that he had rejected the jobs offered by Employer to Claimant because they were beyond the restrictions he had set for Claimant.  (Moran Dep. at 16-19, R.R. 21-24.)  Dr. Moran stated that Claimant was restricted from performing any job that was

10

classified as more strenuous than light-duty work, and specifically that Claimant could not lift objects greater than 5 pounds on any more than a semi-frequent basis or perform any repetitive motions at all with his shoulders or arms. (Moran Dep. at 15-16, 18, R.R. 20-21, 23.) Dr. Moran did not offer an opinion that Claimant was totally and permanently disabled or that he was incapable of performing any type of employment in the future.

Our review of the record demonstrates that there is substantial evidence to support the WCJ's determination that Claimant voluntarily retired from the labor market. It is undisputed that Claimant applied for a union disability pension following his workplace injury and his last day of work at Employer. While Claimant's receipt of the pension alone does not establish a rebuttable presumption of a voluntary withdrawal from the workforce, Employer is entitled to a permissive inference that Claimant has retired from work that must be considered within the context of the totality of the circumstances. *Robinson*, 67 A.3d at 1205-06, 1209; *Chesik*, 126 A.3d at 1076. The WCJ also found probative of Claimant's actual retirement from the labor market that the pension was approved by Claimant's union, rather than Employer, and was only available after a finding of a permanent and total disability. The pension here was notably different than the pension before the Court in *Robinson,* which required only a showing that the employee could not perform her time-of-injury job and allowed the employee to discontinue receipt of disability pension payments and return to work upon an improvement in condition. *See Robinson*, 67 A.3d at 1205, 1210; *see also City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson)*, 4 A.3d 1130, 1137 & n.3 (Pa. Cmwlth. 2010) (*en banc*) (plurality), *aff'd*, 67 A.3d 1194 (Pa. 2013).

As the WCJ stated in his decision, other evidence also weighed in favor of a suspension of Claimant's benefits based on voluntary retirement, including Claimant's admission during testimony at a WCJ hearing that he had not submitted any applications for work anywhere following his last day at Employer on April 30, 2009 despite the clearance to return to work by Dr. Bednarz in a modified position. Furthermore, Claimant began receiving SSD benefits after he ceased working at Employer. Claimant applied for SSD benefits on July 27, 2010, which notably occurred after Dr. Bednarz issued his first IME report in which he stated that Claimant was capable of returning to work in a light-to-medium duty range and the functional capacity evaluation was completed at the request of Claimant's treating orthopedist that concluded that Claimant could return to work in a light-duty position. When Claimant finally was awarded SSD benefits in February 2012, the ALJ stated that Claimant was disabled not only as a result of the condition of his shoulders but also based on depression, which Dr. Moran explained during his deposition was not related to his workplace injury. (Moran Dep. at 13, R.R. 18; Ex. D-7, Notice of Decision at 1, R.R. 159.) As this Court has stated, a claimant's receipt of SSD benefits for reasons other than a work-related medical condition provides evidence to support a finding of a voluntary withdrawal from the labor market. *Burks v. Workers' Compensation Appeal Board (City of Pittsburgh)*, 36 A.3d 639, 643 (Pa. Cmwlth. 2012).

Claimant argues that the WCJ erred by not considering the mandatory language of Article 14 of the CBA, which states that "[i]f an employee is found to be totally and permanently disabled by a doctor, he must apply for [the union] Disability Pension." (Ex. C-3, CBA Art. 14(i)(3), R.R. 4.) Claimant argues that once he was found totally and permanently disabled in the SSD decision he was

12

therefore required to apply for the union disability pension and this decision should not therefore be seen as a voluntary step towards leaving the workforce. Notwithstanding Claimant's argument to the contrary, there is nothing in the WCJ's March 31, 2016 decision that indicates that the WCJ disregarded the language of the CBA. The WCJ recited the language of Article 14 of the CBA in the Findings of Fact and noted Claimant's testimony that he felt compelled to apply for the disability pension based on his SSD application and conversations with his union. (Mar. 31, 2016 WCJ Decision, F.F. ¶5.) Though the WCJ did not specifically reject the CBA language in announcing his conclusion that Claimant had voluntarily withdrawn from the workforce, the WCJ was not required to address every piece of evidence presented by either party, but instead was only required to generally set forth the findings necessary to resolve the issues before him. *Montgomery Tank Lines v. Workers' Compensation Appeal Board (Humphries)*, 792 A.2d 6, 13 n.10 (Pa. Cmwlth. 2002).

Furthermore, Claimant's argument that he suffered a totally and permanently disabling work injury necessitating his disability pension application does not find support in the record. In the SSD decision, the Social Security Administration ALJ found that Claimant could not perform his "past relevant work or other work existing in significant numbers in the national economy" based both on Claimant's work-related shoulder injuries and also his depression, which has not been recognized as a work injury. (Ex. D-7, Notice of Decision at 1, R.R. 159.) Claimant did not present a medical opinion to demonstrate that he had a permanent total disability arising from his shoulder injuries and there is nothing else in the record to show that Claimant's shoulder condition alone caused him to be totally disabled. While Dr. Moran testified that Claimant's work restrictions

13

were permanent, (Moran Dep. at 19, R.R. 24), Dr. Moran did not testify that Claimant was totally disabled as a result of work injuries and Dr. Moran and Dr. Bednarz, along with Penn Therapy and Fitness, which performed the functional capacity evaluation, were in agreement that Claimant was capable of returning to work in at least a light-duty capacity.

Finally, Claimant argues that the WCJ improperly placed the burden of proof on him to show his efforts to continue to seek employment when the burden properly rests on the employer to prove the claimant's voluntary decision to leave the workforce. We disagree. The WCJ accurately explained that receipt of a disability pension does not by itself show voluntary retirement and that the employer bears the burden of proof to demonstrate voluntary withdrawal from the workforce by a totality of the circumstances under *Robinson*. (3/31/16 WCJ Decision, F.F. ¶¶9, 10.) The WCJ then listed the circumstances upon which he relied in concluding that Claimant voluntarily quit the labor force and stated that no evidence was presented that Claimant ever made an attempt to find employment or planned to continue to work in any capacity. (*Id*., F.F. ¶11, C.L. ¶2.) This holding is consistent with the burden shifting scheme outlined in *Robinson* wherein our Supreme Court explained that it would be a "prohibitive" burden to require the employer to prove that the claimant has no intention to continue working. 67 A.3d at 1209-10 (quoting *Henderson*, 669 A.2d at 913). In *Robinson*, the Court made clear that the employer may offer evidence of the claimant's efforts or non-efforts to seek employment to meet its *prima facie* burden and also that the claimant may rebut a finding of voluntary retirement by demonstrating that he is seeking employment following retirement or that he was forced into retirement because of the work injury. 67 A.3d at 1209-10.

14

Accordingly, we conclude that the WCJ did not err in concluding that Claimant voluntarily retired from the labor market and in granting Employer's suspension petition as of January 10, 2012. In light of this holding, we need not address Employer's argument on appeal challenging the Board's May 21, 2015 order reversing the WCJ's November 6, 2013 decision granting Employer's modification petition, which would have reduced Claimant's compensation rate from $691.58 to $82.43 per week, effective January 10, 2012.

The order of the Board is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge

15

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| John Podest, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1785 C.D. 2016 |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (General Dynamics), | : | |
| | : | |
| Respondent | : | |
| | | |
| General Dynamics, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1816 C.D. 2016 |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (Podest), | : | |
| | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 1st day of September, 2017, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge