IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Alpini,                          :
                                             :
                        Petitioner           :
                                             :
            v.                               :  No. 1422 C.D. 2022
                                             :  Submitted: October 10, 2023
Tinicum Township (Workers'                   :
Compensation Appeal Board),                  :
                                             :
                        Respondent           :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                   FILED:  April 16, 2024


        Christopher Alpini (Claimant) petitions for review (Petition) of a
decision of the Workers' Compensation (WC) Appeal Board (Board), which
affirmed a workers' compensation judge's (WCJ) order to suspend Claimant's WC
benefits.  The WCJ found that Claimant had voluntarily removed himself from the
workforce, thus entitling Tinicum Township (Employer) to a suspension of his
benefits.  Claimant argues that the Board erred in affirming because he has not
voluntarily withdrawn from the workforce.  After careful review, we affirm.

        "Claimant was injured in his job as a police officer for Employer on
April 17, 2011, in a work-related motor vehicle accident [MVA].  He sustained

injuries to his lumbar spine, ribs, left knee, left hip and pelvis, and his injury was accepted by a Notice of Compensation Payable." WCJ's Opinion, 2/18/22, Finding of Fact (F.F.) No. 3a. Until his retirement from Employer on January 1, 2018, Claimant received his full salary under the Heart and Lung Act.[1] *Id*. at F.F. No. 3b. As of that date, Claimant began receiving a service-connected disability pension. Reproduced Record (R.R.) at 25a. Additionally, Claimant recovered $750,000.00 in a third-party action in connection with his injury and he does not pay for any related treatment. WCJ's Opinion at F.F. No. 3b. On October 23, 2020, Employer filed a suspension petition, "alleg[ing] that Claimant had voluntarily withdrawn from the workforce . . . ." *Id*. at F.F. No. 2.

Since the date of his injuries, Claimant has undergone eight surgeries, and "Claimant describe[s] the severity of his physical condition as unpredictable." WCJ's Opinion at F.F. No. 3f. Nevertheless, the WCJ found that (1) Claimant's restrictions do not limit him from using a computer or completing work remotely and (2) that he may drive, albeit with restrictions. *Id*. at F.F. No. 3e. Prior to Employer's filing, Claimant made inquiries with Auld Associates, a company which routinely hires retired law enforcement officers for security work. *Id*. at F.F. No. 3d. Auld Associates has two wings: one concerning security and the other concerning investigations. *Id*. at F.F. No. 4b. Although Claimant contacted Brian Auld, the director of operations, twice, it never culminated in an application, nor the attendant background check. *Id*. at F.F. Nos. 4a, 4c-4d. Additionally, Claimant's inquiries pertained solely to the securities wing of Auld Associates, rather than the less physically demanding investigations wing. *Id*. at F.F. No. 4d. Outside of these inquiries, Claimant has not searched for employment within his capabilities. *Id*. at

---

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-38.

F.F. No. 3e. Currently, Claimant is the primary caretaker for his children. *Id*. at F.F. No. 3c.

The WCJ granted Employer's suspension petition, after finding: (1) Claimant was separated from his time of injury employer; (2) Claimant admitted he was not totally disabled, such that he was capable of work outside of his pre-injury employment; and (3) Claimant made no good faith attempt to return to work. WCJ's Opinion at F.F. No. 5 (citing *Philips Respironics v. Workers' Compensation Appeal Board (Mika)*, 232 A.3d 1019, 1023 (Pa. Cmwlth. 2020)). Ultimately, the WCJ opined: "Based on the foregoing credible evidence of record and *the totality of the circumstances presented herein*, this [WCJ] concludes that Employer has met the initial burden to establish that Claimant has voluntarily removed himself from the workforce, such as would entitle Employer to a suspension of benefits." *Id*. at Conclusions of Law (C.L.) No. 1 (emphasis added). On February 24, 2022, Claimant appealed the WCJ's decision. R.R. at 99a-103a.

On November 29, 2022, the Board affirmed the WCJ's decision. Initially, the Board found that the WCJ relied on substantial evidence in determining "that Claimant removed himself from the workforce based on the burden shifting paradigm authorized by both *Philips Respironics* and [*City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson) (Robinson II)*, 67 A.3d 1194, 1209-10 (Pa. 2013)]." Board Opinion, 11/29/22, 9. Specifically, the Board held:

> Herein the WCJ credited the evidence that Claimant voluntarily left the workforce when he retired from the police department and accepted the pension from [Employer] in January 2018. This evidence is coupled with the credible evidence which establishes that despite Claimant's acceptance of this pension and retirement from the police force, his numerous surgeries since his work-related MVA, and his admission that he was not totally

3

disabled because there are some jobs he could perform, Claimant has not obtained any such employment. This credible evidence constitutes sufficient substantial evidence to support that [Employer] met its *prima facie* case that Claimant removed himself from the workforce.

*Id*. at 9-10. Critically, the Board agreed with the WCJ that Claimant failed to carry his burden of proving that he was actively seeking employment within his work restrictions. *Id*. at 11.

On December 21, 2022, Claimant filed the instant Petition seeking a reversal of the Board's order. Petition at 1-3. The sole issue before us now is whether the Board erred in affirming the WCJ's determination that Claimant had voluntarily removed himself from the workforce.

First, Claimant argues that the Board has mistakenly relied on *Philips Respironics*. Petitioner's Brief at 10. Instead, Claimant contends *Robinson II* is controlling. Petitioner's Brief at 10. Therein our Supreme Court noted:

A claimant's receipt of disability pension alone does not sustain the employer's burden. . . . Rather, receipt of a disability pension may create a permissive inference that a claimant has retired but is not sufficient on its own to establish that fact; the inference must be considered in the context of the totality of the circumstance.

Petitioner's Brief at 11 (citing *Robinson II*, 67 A.3d at 1209-10). To that end, Claimant argues that Employer cannot carry its burden in light of the totality of the circumstances: (1) the severity of his conditions remains unpredictable; (2) although Claimant is unemployed, he has never expressed that he has removed himself from the workforce; and (3) conversations with Claimant's doctor led to the understanding that he would be physically unable to complete a rehabilitation program or undertake permanent work. Petitioner's Brief at 12-13. Taken together, Claimant argues that he never voluntarily left the workforce. *Id*. at 13.

4

Alternatively, Claimant argues that even if Employer has carried its burden, he has rebutted it with credible evidence. In his view, he has manifested a desire and intention to work and made a good faith effort to obtain employment, as evidenced by his inquiries at Auld Associates, and Brian Auld's testimony that he regarded this inquiry as asking for a job. *Id.*

Finally, Claimant contends *Philips Respironics*, 232 A.2d at 1021, is inapposite here, because this Court presumed that the claimant therein voluntarily left the workforce after leaving a modified duty job for non-injury related reasons – including financial considerations. Petitioner's Brief at 14. "Under the totality of the circumstances in [*Philips Respironics*], the [C]ourt reasoned that the employer established that the claimant voluntarily left the workforce, and that he thereafter failed to show that his work injury alone prevented him from working." *Id.* Whereas, here, Claimant retired only because Employer placed him on the permanent service-disability pension and Claimant continues to search for employment. *Id.*

Conversely, Employer cites *City of Pittsburgh v. Workers' Compensation Appeal Board (Leonard),* 18 A.3d 361, 364 (Pa. Cmwlth. 2011), noting:

> It is clear that disability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement. The mere possibility that a retired worker may, at some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability. An employer should not be required to show that a claimant has no intention of continuing to work; such a burden of proof would be prohibitive.

5

Respondent's Brief at 8. Moreover, Employer claims that this Court expanded upon *Leonard* in *Philips Respironics*, 232 A.3d at 1022 (emphasis in original), holding "if [a] claimant is not disabled from all employment, the claimant must show that he or she has not voluntarily withdrawn from the ***entire*** labor market, specifically the jobs within his or her physical capabilities." Respondent's Brief at 8-9. Thus, Employer likens the instant case to *Philips Respironics*, because: "[h]ere, Claimant acknowledged that he has the ability to work. Despite that being the case, Claimant has not made any documented attempts to look for work commensurate with his abilities." *Id*. at 9. Finally, Employer argues that Claimant's inquiries with Brian Auld "tells us two important things: (1) Claimant acknowledges that he has the ability to work in some capacity and (2) Claimant has made no real effort to obtain employment. A single lunch and phone call in five years does not show a good faith effort to secure employment." *Id*. at 10.

At the outset,[2] we note that, generally, an employer who seeks to suspend a claimant's WC benefits must either: (1) show that it referred the claimant to an available job within the claimant's physical restrictions, as stated in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 532 A.2d 374, 380 (Pa. 1987); or (2) establish the claimant's "earning power" through expert opinion evidence, as stated in *South Hills Health System v. Workers' Compensation Appeal Board (Kiefer)*, 806 A.2d 962, 966 (Pa. Cmwlth. 2002). *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson) (Robinson I)*, 4 A.3d 1130, 1134 (Pa. Cmwlth. 2010). However, an employer will be entitled to a suspension of

---

[2] Our "review is limited to determining whether there has been an error of law, whether constitutional rights were violated, or whether necessary findings were supported by substantial evidence." *Jamieson v. Workmen's Compensation Appeal Board (Chicago Bridge & Iron)*, 691 A.2d 978, 982 (Pa. Cmwlth. 1997).

benefits, without proof of either, where the claimant has voluntarily left the labor market. *Turner v. Workers' Compensation Appeal Board (City of Pittsburgh)*, 78 A.3d 1224, 1228 (Pa. Cmwlth. 2013).

Where an employer is seeking a suspension on the basis of a voluntary withdrawal, our Supreme Court has explained the burden shifting framework as follows:

> Where the employer challenges the entitlement to continuing compensation on grounds that the claimant has removed himself or herself from the general workforce by retiring, the employer has the burden of proving that the claimant has voluntarily left the workforce. There is no presumption of retirement arising from the fact that a claimant seeks or accepts a pension, much less a disability pension; rather, the worker's acceptance of a pension entitles the employer only to a permissive inference that the claimant has retired. Such an inference, if drawn, is not on its own sufficient evidence to establish that the worker has retired – the inferences must be considered in the context of the totality of the circumstances. The factfinder must also evaluate all of the other relevant and credible evidence before concluding that the employer has carried its burden of proof.
>
> If the employer produces sufficient evidence to support a finding that the claimant has voluntarily left the workforce, then the burden shifts to the claimant to show that there in fact has been a compensable loss of earning power. Conversely, if the employer fails to present sufficient evidence to show that the claimant has retired, then the employer must proceed as in any other case involving a proposed modification or suspension of benefits.

*Robinson II*, 67 A.3d at 1209-10. To that end, an employer may demonstrate that the claimant has voluntarily withdrawn from the labor market by presenting evidence of "the claimant's receipt of a pension, the claimant's own statements

7

relating to voluntary withdrawal, and the claimant's efforts or non-efforts to seek employment." *Id*. at 1210; *Turner*, 78 A.3d at 1231.

In *Robinson II*, 67 A.3d at 1200, our Supreme Court addressed whether its decision in *Southeastern Pennsylvania Transit Authority v. Workmen's Compensation Appeal Board (Henderson)*, 669 A.2d 911 (Pa. 1995), should be interpreted as establishing a rebuttable presumption of the claimant's voluntary withdrawal from the workforce where the claimant receives a pension. In addition to the analytical framework recited above, the Supreme Court noted that *Henderson* disapproved of any requirement of an unequivocal statement as to whether the claimant is open to employment in determining whether a claimant has voluntarily withdrawn from the workforce. *Id*. at 1209. Although the claimant in *Robinson II* did not unequivocally testify that she had voluntarily withdrawn, the *Robinson II* Court found *Henderson* probative because it nevertheless "teaches, when the employer presents sufficient evidence to establish that the claimant may have retired from the workplace, it is the claimant who must show that he or she is seeking employment . . . or that he or she was forced into retirement because of the work injury." *Id*. In sum, "the [] 'totality of the circumstances' test is simply another way of saying that the factfinder must evaluate all of the relevant evidence in determining whether a worker has retired from the workforce." *Id*.

In *Philips Respironics*, 232 A.3d at 1021-23, the claimant left a modified-duty job with employer to become a stay-at-home father, and his testimony reflected that his family was better served financially by his wife entering the workforce instead. Therein, the Board reversed the WCJ's decision to suspend his benefits, because it determined his testimony relating to voluntary withdrawal did not unequivocally establish his *permanent* removal from the workforce. *Id*. at 1023.

8

On appeal, we observed: "The mere possibility that a retired worker may, at some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability." *Id*. at 1021 (internal citations omitted). Therefore, *Philips Respironics* initially cautioned that the Board had erred by finding the employer had to demonstrate the claimant had *permanently* removed himself from the workforce, rather than demonstrating he had removed himself from the *entire* workforce. We noted:

> [T]here may be circumstances where a claimant may be forced to retire from his or her time-of-injury job due to a work-related injury, but may not be disabled from other type of work. In that situation, the claimant must show that he or she has not voluntarily withdrawn from the *entire labor market and is open to employment within his or her physical capabilities to be entitled to benefits* under the [WC] Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1-1041.4.

*Id*. at 1021-1022 (citing *County of Allegheny v. Workers' Compensation Appeal Board (Weis)*, 872 A.2d 263, 266 (Pa. Cmwlth. 2005)) (emphasis added).

Ultimately, we determined the claimant was not entitled to continued wage loss benefits, because he had "unequivocally testified that he had stopped looking for work, in part due to his [] condition and in part due to the economics of his personal situation." *Philips Respironics*, 232 A.3d at 1024. Contrary to Claimant's argument, the pivotal distinction in *Philips Respironics* is not that the claimant left his modified-duty job, but that the claimant acknowledged his ability to work in some capacity, and unequivocally testified he was not open to working at all.[3] This satisfied the burden-shifting paradigm, such that "[the employer] was not

---

[3] Notably, our Supreme Court denied allocatur. *Philips Respironics v. Workers' Compensation Appeal Board (Mika)*, 242 A.3d 631 (Pa. 2020).

9

required to present evidence of available work within [the claimant's] restrictions or expert testimony regarding [the claimant's] earning power." *Id*.

Claimant suggests that *Philips Respironics* and *Robinson II* compel different outcomes here. We do not agree. Although *Philips Respironics* did not employ the totality of the circumstances test by name, it nevertheless considered the claimant's own unequivocal testimony regarding his voluntary removal from the workforce. If the totality of the circumstances test is "simply another way of saying" that the WCJ must consider all the relevant evidence in determining whether a claimant has removed himself from the workforce, then the Court in *Philips Respironics* did just that. *Robinson II*, 67 A.3d at 1209. After all, if a claimant acknowledges his ability to work, but testifies that he is unwilling to rejoin the labor market, what circumstance would sustain a finding that he is entitled to continued benefits? Thus, while *Henderson* and *Robinson II* teach that we may not treat unequivocal testimony of a claimant's intention to withdraw from the entire workforce as a requirement of voluntary withdrawal, *Philips Respironics* reaffirms that such testimony is still instructive.

Here, however, the WCJ never found that Claimant unequivocally testified that he had withdrawn from the entire labor market. The WCJ found that Claimant had admitted he was not totally disabled and capable of remote work. Indeed, Claimant's testimony bears this out:

> Q: I'll focus on you, [Claimant]. With all the jobs that you know that are out there that people do, from your own personal knowledge, would you agree that you're capable, physically capable of some type of work for gainful employment?
>
> * * *

10

A:  I think as far as -- I know there [are] millions and millions of type[s] of jobs out there.  I'm sure there is something that I could contribute to, yeah.

WCJ's Hearing, 3/3/2021, Notes of Testimony (N.T.), at 13; R.R. at 55a. Additionally, Claimant testified:

Q: Now, anything at all that Counsel has told you about what you will receive and maybe when [you'll] receive it [relating to benefits and a settlement agreement], does that impact on your desire to return to the workforce?

A: Absolutely not.

Q: All right. Why not?

A: This isn't the life I want.  I want to work.

WCJ's Hearing, 6/28/21, N.T., at 27; R.R. at 69a.  While Claimant's testimony indicates an acknowledgement that he is capable of joining the labor market in some capacity, it also demonstrates an openness to rejoining the workforce.  This is in stark contrast to the unequivocal testimony presented in *Philips Respironics*, 232 A.3d at 1022-23, where the claimant testified that he was not looking for work within his restrictions, or even open to it at that time, because it made better financial sense to remain a stay-at-home father.  Consequently, the present matter bears less likeness to *Philips Respironics* than Employer would have us believe.

Even so, because *Philips Respironics* does not contravene *Robinson II*, the Board did not "misplace" its reliance on it while reviewing the pertinent law regarding the burden-shifting paradigm for voluntary withdrawal.  Ultimately, the Board's analysis turned on the circumstances of this case: "[D]espite Claimant's acceptance of this pension and retirement from the police force, his numerous surgeries since his work-related MVA, and his admission that he was not totally disabled because there were some jobs he could perform, he has not obtained any

11

such employment." *See* Board Opinion at 9-10. Likewise, the WCJ expressly noted: "Based on the foregoing credible evidence of record and *the totality of the circumstances* presented herein, this [WCJ] concludes as a matter of law that Employer has met the initial burden to establish that Claimant has voluntarily retired or removed himself from the workforce . . . ." WCJ's Opinion at C.L. No. 1 (emphasis added). Thus, neither the Board nor the WCJ deviated from the totality of the circumstances test and burden-shifting framework required under *Robinson II*.

Employing that test here, the Board did not err in finding Claimant voluntarily withdrew from the entire labor market. As stated above, the Board observed that Claimant began receiving a service-connected disability pension upon his retirement from Employer and, since then, Claimant has acknowledged his ability to participate in the labor market but has neglected to seek employment within his restrictions. This analysis expressly considers the "the context of the totality of the circumstances[,]" by way of the same factors stated in *Robinson II*, 67 A.3d at 1210, including his receipt of a pension, his own testimony, and his non-efforts at seeking employment. Consequently, Employer sustained its *prima facie* burden.

Claimant, however, failed to carry his burden in response. Put simply, he failed to provide evidence of any good faith attempt to obtain employment commensurate with his restrictions. "To show that [a claimant] was engaged in a good-faith effort, a claimant has to show that he applied or sent applications for employment or other indicia that he was actively applying for employment." *Pennsylvania State University v. Workers' Compensation Appeal Board (Hensal)*, 948 A.2d 907, 911 (Pa. Cmwlth. 2008) (holding that surfing the web and searching newspaper ads for jobs is not sufficient, it is merely "window shopping"); *but* c.f.

12

*Leonard*, 18 A.3d at 366-67 (finding that the claimant made a good faith effort to obtain employment because he contacted six employers and actually applied for two positions, although he later discovered one position was precluded by his physical restrictions).

Presently, Claimant's inquiries with Auld Associates never culminated in an actual application, and regardless of Brian Auld's interpretation of his meeting with Claimant, these inquiries pertained solely to employment *precluded* by his physical restrictions. Because Claimant's only evidence of a good-faith effort to obtain employment was a lunch meeting for a position outside the scope of his physical restrictions, the instant matter bears more likeness to the "window shopping" in *Hensal* than the extensive efforts recounted in *Leonard*. Taken together, the Board correctly affirmed the WCJ in finding that Claimant voluntarily removed himself from the workforce and, likewise, the Board properly affirmed the WCJ's grant of Employer's Petition.

Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Alpini,     :
             :
      Petitioner :
             :
    v.      : No. 1422 C.D. 2022
             :
Tinicum Township (Workers'  :
Compensation Appeal Board),  :
             :
     Respondent :

## **O R D E R**

AND NOW, this 16th day of April, 2024, the order of the Workers' Compensation Appeal Board, dated November 29, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge